Kim HOWARTON, Individually and as Next Friend for Patricia Lynn Howarton and Harvey Lynn Howarton, and Marion Lynn Howarton, Sr., Appellants,

v.

MINNESOTA MINING AND MANUFACTURING, INC., Appellee.

No. 11–02–00280–CV.

Court of Appeals of Texas, Eastland.

April 8, 2004.

Rehearing Overruled May 27, 2004.

Michael M. Probus, Jr., Scott Steele, Austin, for appellants.

Aldean E. Kainz, Allison Kalisek, Jackson Walker, LLP, Austin, for appellee.

Robert M. Meador, Terri J. Meador, Meador & Meador, for intervenor.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

JIM R. WRIGHT, Justice.

Marion Lynn Howarton, Jr. (Howarton) was electrocuted while working for Three Rivers Electric Company, an independent contractor retained by Minnesota Mining and Manufacturing, Inc. (3M). After appellants[1] settled other claims involving Three Rivers, their wrongful death suit against 3M continued. 3M filed a motion requesting summary judgment on traditional grounds as well as no-evidence grounds. The trial court entered a summary judgment in favor of 3M that appellants take nothing in their suit against 3M. The trial court stated in its order that it had heard 3M's "Motion for Summary Judgment against [appellants] on the ground that there is no genuine issue of material fact in this action."

Appellants urge four issues on appeal. In "Issue 1," appellants argue that the trial court erred when it granted 3M's motion for summary judgment. In "Issue 1, Subpoint A; Issue 1, Subpoint B; and Issue 1, Subpoint C," appellants assert claims directed toward 3M's alleged failure to negate the existence of various duties that 3M owed to Howarton. Because we find that 3M negated the existence of any legal duty that it owed to Howarton, we affirm.

3M based its motion for summary judgment on traditional grounds as well as no-evidence grounds. TEX.R.CIV.P. 166a(c) and TEX.R.CIV.P. 166a(i). Because we hold that the trial court did not err when it granted a traditional motion for summary judgment, we will not discuss 3M's no-evidence motion.

If the movant in a traditional motion for summary judgment establishes that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law, then the trial court must grant the motion. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). The trial court must also grant a motion for a traditional summary judgment if a defendant conclusively negates at least one element of the plaintiff's claim. *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). Upon review of a traditional motion for summary judgment, we take as true evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in favor of the non-movant. *American Tobacco Company, Inc. v. Grinnell, supra; Kelly v. LIN Television of Texas, L.P.*, 27 S.W.3d 564 (Tex. App.-Eastland 2000, pet'n den'd).

Reviewed in the light most favorable to appellants, the summary judgment evidence shows that 3M entered into a standing contract with Three Rivers whereby it was agreed that Three Rivers would perform electrical work as needed from time to time at 3M's Brownwood plant. Under the terms of the contract, if 3M wanted Three Rivers to perform electrical work at the plant, 3M issued a request for that work by signing an "activating letter." Three Rivers could either accept or reject the work. On January 5, 1995, 3M issued a general activating letter to Three Rivers. The activating letter covered the period of time from January 1, 1995, to December 31, 1995. Specific requests under the terms of the activating letter were made from time to time by 3M through shop work orders.

---

1. Appellants are Howarton's family members: Kim Howarton, Patricia Lynn Howarton, Harvey Lynn Howarton, and Marion Lynn Howarton, Sr.

Howarton worked for Three Rivers as a journeyman electrician. On August 21, 1995, he was working on a ballast retrofit project at the 3M plant. The project involved replacing a ballast on a 277–volt circuit. The circuit was energized, and Howarton died when he came into contact with the energized circuit. Appellants seek wrongful death damages against 3M. 3M takes the position that, under the circumstances of this case, it owed no legal duty to Howarton.

■ An owner of premises may be liable for negligence in failing to keep the premises safe in connection with premise defects or in connection with activities conducted on the premises. *Koch Refining Company v. Chapa,* 11 S.W.3d 153, 157 (Tex.1999). Appellants have not alleged a premise defect; this is a negligent activity case.

■ Negligence consists of three essential elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. Duty is the threshold inquiry. *El Chico Corporation v. Poole,* 732 S.W.2d 306, 311 (Tex.1987).

■ The general rule is that an employer of an independent contractor does not have a duty to see to it that the independent contractor performs its work in a safe manner. *Abalos v. Oil Development Company of Texas,* 544 S.W.2d 627 (Tex.1976). However, if the employer retains some control over the manner in which the work is done, then a duty may arise as a result of that control. *Hoechst–Celanese Corporation v. Mendez,* 967 S.W.2d 354 (Tex.1998). If there is no control over the work of the independent contractor, then a legal duty does not arise. *Elliott–Williams Co., Inc. v. Diaz,* 9 S.W.3d 801 (Tex.1999).

■ Control may be either actual or contractual. *Elliott–Williams Co., Inc. v. Diaz, supra.* A duty may arise by virtue of a contract, even in the absence of actual control; and the employer of the independent contractor may be liable unless the employer exercises reasonable care in supervising the independent contractor's activity. *Elliott–Williams Co., Inc. v. Diaz, supra; Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985).

■ Texas has adopted the limited-duty rule set forth in RESTATEMENT (SECOND) OF TORTS § 414 (1965) that, if a premises owner retains some control over the work of the independent contractor, it must exercise that control with reasonable care. Section 414, cmt. c. Simply retaining the general right to recommend a safe manner for the independent contractor's employees to perform their work is not enough to subject a premises owner to liability. *Koch Refining Company v. Chapa, supra.* Section 414, cmt. c provides:

In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

■ Appellants have not argued that 3M exercised actual control. Therefore,

we will determine whether 3M contractually retained the type of control that would give rise to a legal duty owed to employees of Three Rivers. Whether that right of control exists is generally a question of law. *Dow Chemical Company v. Bright,* 89 S.W.3d 602, 606 (Tex.2002).

In *Elliott–Williams Co., Inc. v. Diaz, supra* at 804, the court noted:

> For a general contractor to be liable for its independent contractor's acts, it must have the right to control the means, methods, or details of the independent contractor's work. Further, the control must relate to the injury the negligence causes, and the contract must grant the contractor at least the power to direct the order in which work is to be done. (Citations omitted)

In their brief to this court, appellants refer to various provisions of the standing contract and 3M's safety provisions as evidence that 3M contractually retained control over the work and, therefore, owed a legal duty to employees of Three Rivers to see to it that the work was performed in a safe manner. We will first examine the provisions of the standing contract relied upon by appellants, and then we will examine 3M's safety procedures upon which appellants rely.

 Article 20.1 of the standing contract provided that 3M may unilaterally require Three Rivers to perform extra work or change work without invalidating the standing contract or without changing the provisions of the standing contract except for terms regarding price and completion dates. This is not the type of contractual provision by which 3M retains control over the means, methods, or details of Three Rivers's work. This clause of the contract created no legal duty as to 3M.

*See Elliott–Williams Co., Inc. v. Diaz, supra* at 804.

 Article 30 of the standing contract allowed 3M access to inspect the work. The article also required that Three Rivers provide safe and proper access for any such inspection. The general right to inspect did not give rise to the duty necessary to place liability upon 3M. *Hoechst–Celanese Corporation v. Mendez, supra* at 356.

 Article 33.5 of the standing contract allowed 3M, if it deemed the work or any part of the work site unsafe, to request that Three Rivers stop performance of the work and take corrective measures satisfactory to 3M. The article also provided that 3M's failure to notice or to stop unsafe practices did not relieve Three Rivers of its duties under this provision. While a duty may arise if an employer retains the power to forbid employees of its independent contractor from performing work in a dangerous manner, that duty does not arise unless the employer retains the right to control the independent contractor as to the methods or operative details of the work. Section 414, cmt. c; *Hoechst–Celanese Corporation v. Mendez, supra* at 356. The right retained by the employer must be such that the independent contractor is not entirely free to perform the work in its own way. Section 414, cmt. c; *Koch Refining Company v. Chapa, supra* at 155. 3M did not retain such rights of control under this article of the standing contract sufficient to give rise to any duty to employees of Three Rivers; it did not retain the right to control the means, methods, or operative details of the work.

 In Article 38.2 of the standing contract, 3M reserved:

[T]he right to determine the sequence in which the Work of [Three Rivers] and its subcontractors shall be performed. In the exercise of said right, [3M] may direct [Three Rivers] or its subcontractors, if any, to adapt its activities and the sequence of the Work, and [Three Rivers] and its subcontractors shall do so accordingly, to accord with the operations conducted at the Worksite by Others. In the exercise of said right, if [3M] deems such necessary, [Three Rivers] shall cease the Work at any particular point(s) and shall perform such directed portions of the Work as may be required to enable others to proceed with their work properly.

3M merely retained the right to schedule the work it wanted Three Rivers to perform. It did not retain the right to control the means, methods, and operative details of the work. 3M did not retain sufficient control under Article 38.2 to give rise to any duty of care owed to Three Rivers's employees under the circumstances of this case.

Furthermore, Article 12.1 of the contract contains language whereby the parties agreed that Three Rivers was an independent contractor; that its employees were subject solely to its control, supervision, and authority; and that, "under no circumstances or for any purposes, [were] they to be construed or considered to be [3M's] employees." Additionally, the parties agreed in Article 33.1 of the contract that Three Rivers was solely responsible for the safety and protection of persons at the work site, including compliance with safety procedures and requirements. *See Dow Chemical Company v. Bright, supra* at 606–07; *Koch Refining Company v. Chapa, supra* at 157.

Appellants rely upon *Redinger v. Living, Inc., supra.* Living, Inc. was the general contractor on a building project. David Yargo, Living, Inc.'s superintendent, was on the site preparing for a concrete pour. Bobby Baird, a dirt subcontractor, was also working on the site, as was Louis Redinger, who was an employee of a plumbing subcontractor. When the concrete trucks arrived, Yargo noticed that piles of dirt left by Baird were blocking the concrete trucks. Yargo directed Baird to move the dirt. Redinger was injured when the box blade on Baird's tractor hit Redinger, causing injuries to his left index finger. *Redinger* is distinguishable. There, unlike here, the general contractor's employee specifically directed the manner and means of the work to be performed. The court there pointed out that "Yargo exercised supervisory control by coordinating the work performed by two subcontractors." The court also noted that there was evidence that Living, Inc. was negligent when it allowed Baird to operate the tractor in Redinger's presence and when it failed to warn him. The duty that the court imposed upon the general contractor was a duty to exercise its supervisory control in a reasonable manner. *Redinger v. Living, Inc., supra* at 418; *see also Lee Lewis Construction, Inc. v. Harrison,* 70 S.W.3d 778 (Tex.2001)(where general contractor exercised actual control over fall-protection equipment and owed a duty of care toward employee of independent contractor injured when fall-protection equipment failed).

Section 1.2(A) of 3M's safety guidelines provided the purpose, scope, and philosophy of the guidelines. Three Rivers was required to follow and to enforce the guidelines.

Section 1.5(A) addressed work permits. 3M required that daily work permits be issued before Three Rivers could enter the

plant. Further, in accordance with Section 1.5(B)(9), under certain circumstances, additional work permits could be required for certain activities such as electrical work with an energized system. Section 1.5(C) provided for a change in conditions of the work. If the conditions of the work were to change from that noted on the work permit, the "WORK SHALL STOP IMMEDIATELY" while the new situation was studied and new work permits were issued.

According to the terms of Section 1.8(A), Three Rivers was required to be in compliance with "Lockout/Tagout" before starting work that involved cutting, splicing, or tapping existing cables. Upon request from Three Rivers, 3M was to tag and identify all cables present in the area. It was the responsibility of Three Rivers to make certain that the circuit upon which its employees were to work was de-energized and the *"source locked out."* (Emphasis in original) Three Rivers was to use its own lock on the disconnect device and was also to review a one-line diagram to make certain that there were no alternate power sources. In the event that it was necessary to work on energized electric lines, only qualified Three Rivers personnel, using appropriate personal protection equipment, were to do the work. This section also required that at least two people were to be assigned to work on energized lines. The summary judgment evidence shows that those procedures were not being followed at the time Howarton was killed.

In *Koch Refining,* the injured worker claimed that Koch Refining owed him a duty of care because Koch's safety personnel had instructed the independent contractor's employees on safety matters in the past. The court rejected the argument because:

[R]equiring an independent contractor to "observe and promote compliance with federal laws, general safety guidelines, and other standard safety precautions [does] not impose an unqualified duty of care on [a premises owner] to ensure that [an independent contractor's employees do] nothing unsafe." Rather, Koch at most owed [the independent contractor's] employees "a duty that any safety requirements and procedures it promulgated did not unreasonably increase, rather than decrease, the probability and severity of injury."

*Koch Refining Company v. Chapa, supra* at 156 (citing *Hoechst–Celanese Corporation v. Mendez, supra* at 357–58).

 The fact that 3M required Three Rivers to comply with 3M's safety regulations is not evidence that 3M exercised the degree of control necessary to create a duty of care. Further, it is not evidence that 3M controlled or retained the right to control the means, methods, or operative details of the work. *Dow Chemical Company v. Bright, supra* at 606–07; *Koch Refining Company v. Chapa, supra.* 3M owed Three Rivers's employees the narrow duty that 3M's safety requirements did not "unreasonably increase, rather than decrease, the probability and severity of injury." *Hoechst–Celanese Corporation v. Mendez, supra* at 358. Appellants make no claim that the safety requirements increased the probability or severity of injury.

 Appellants argue that working on energized electrical lines is an inherently dangerous activity and that 3M failed to negate the existence of a non-delegable duty that arose as a result of the inherently dangerous activity. 3M points out that appellants have waived this argument be-

cause they are making it for the first time on appeal. We agree that appellants did not present this issue to the trial court. In summary judgment matters, non-movants must expressly present to the trial court all issues that would defeat the movant's right to a summary judgment. If the non-movant fails to do so, the issues cannot later be assigned as error on appeal. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 679 (Tex.1979).

Because 3M negated the duty element of appellants' cause of action, the trial court did not err when it granted 3M's motion for summary judgment. Appellants' "Issue 1; Issue 1, Subpoint A; Issue 1, Subpoint B; and Issue 1, Subpoint C" are overruled.

The judgment of the trial court is affirmed.