**Affirmed and Opinion filed March 22, 2012.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

———————————

## NO. 14-11-00537-CV

———————————

## MARK JOHNSTON, Appellant,

## V.

## OILTANKING HOUSTON, L.P., Appellee.

**On Appeal from the 334th District Court**
**Harris County**
**Trial Court Cause No. 2009-74868**

## OPINION

Appellant Mark Johnston was injured while working for Rodgers Electrical Services, Inc., an independent contractor hired by appellee Oiltanking Houston, L.P., to perform various services on Oiltanking's premises. In one issue, Johnston contends that the trial court erred in granting summary judgment for Oiltanking. We affirm.

# I

In March 2008, Johnston was working for Rodgers at Oiltanking's Houston facilities when he fell from an unsafe height. Oiltanking and Rodgers were parties to a "Master Service Agreement" under which Rodgers, an independent contractor, agreed to provide miscellaneous civil, mechanical, marine construction, and maintenance services to Oiltanking upon request. The agreement had been in place since 1999.

Before he fell, Johnston had been wiring programmable logic controllers. Johnston was standing in a cable tray some distance above the ground pulling cable for the controllers. He was not wearing a safety harness because Rodgers' employees told him they did not have one large enough for him. When Johnston began to climb down, he grabbed onto the cable tray and put his left foot down on the handrail that guarded the catwalk below. The cable tray rolled, and Johnston lost his balance and fell into a concrete pit, sustaining serious injuries.

Johnston sued Oiltanking for negligence, alleging that he sustained damages as a result of allegedly dangerous conditions and activities conducted on Oiltanking's job site. Oiltanking answered and filed a combined traditional and no-evidence motion for summary judgment.

In the summary-judgment motion, Oiltanking argued that Johnston was an employee of Rodgers, an independent contractor, and therefore Oiltanking was not responsible for Johnston's work-related injuries. Johnston responded that Oiltanking maintained contractual control of the premises under the master service agreement with Rodgers and had a duty to exercise reasonable control over activities on its premises.

On May 20, 2011, the trial court granted Oiltanking's motion for summary judgment. Because we conclude that the trial court did not err when it granted a traditional motion for summary judgment, we need not discuss Oiltanking's no-evidence motion.

II

A

A traditional summary judgment is properly granted only when the movant establishes that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott,* 128 S.W.3d 211, 215–16 (Tex. 2003). A defendant moving for traditional summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997).

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Provident Life & Accident Ins. Co*., 128 S.W.3d at 215. Because the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *See id.* at 216.

B

Negligence consists of three essential elements: (1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach. Duty is the threshold inquiry. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Johnston alleges a negligent-activity claim, contending that Oiltanking breached a duty to exercise ordinary care in the operation of the job site and the cable tray.[1]

---

[1] Although Johnston's petition could be read to include both a negligent-activity and a premises-defect claim, in response to Oiltanking's motion for summary judgment and on appeal Johnston takes the position that his claim is not one for premises defect. *See Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997) (explaining that "[a] general contractor in control of the premises may be

3

Generally, a premises owner or general contractor has no duty to ensure that an independent contractor safely performs his work. *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 356 (Tex. 1998) (per curiam); *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418 (Tex. 1985).[2] However, when the general contractor retains some control over the independent contractor's work, it must exercise that control with reasonable care. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 607 (Tex. 2002); *Redinger*, 689 S.W.2d at 418.

Section 414 of the Restatement (Second) of Torts, which the Texas Supreme Court adopted in *Redinger,* explains this rule:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

689 S.W.2d at 418 (quoting RESTATEMENT (SECOND) OF TORTS § 414 (1977)). The comments to section 414 of the Restatement further explain:

> In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

---

liable for two types of negligence in failing to keep the premises safe: that arising from an activity on the premises, and that arising from a premises defect").

[2] A premises owner and a general contractor both owe the same duties to an independent contractor's employees; therefore, cases considering these duties are used interchangeably. *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 n.1 (Tex. 1999).

4

*Mendez*, 967 S.W.2d at 356 (quoting RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1977)).

Some years after *Redinger*, the Texas Legislature enacted Chapter 95 of the Texas Civil Practice and Remedies Code as part of sweeping tort-reform legislation. *See Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 699 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). Chapter 95 provides that a property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:

> (1) *the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports*; and
>
> (2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

Tex. Civ. Prac. & Rem. Code § 95.003. (emphasis added); *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 699–700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (citing *Dyall*, 152 S.W.3d at 699). The effect of section 95.003 was to codify the *Redinger* court's adoption of section 414 of the Restatement and to further limit a property owner's liability by requiring a plaintiff to prove that the owner had actual knowledge of a dangerous condition. *Id.* at 700. For purposes of our analysis, we focus solely on the control issue.

A party can prove control through evidence of an agreement that "explicitly assigns the premises owner a right to control" or by evidence that the "owner actually exercised control over the manner in which the independent contractor's work was performed." *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002); *Ellwood Tex. Forge Corp.*, 214

S.W.3d at 699–700. Johnston does not allege or cite any evidence that Oiltanking exercised actual control over Rodgers' work. Therefore, we will determine whether Oiltanking contractually retained the type of control that would give rise to a legal duty owed to Rodgers' employees.

When a party contractually retains a right of control over the independent contractor's work, the failure to exercise that control will not absolve the party's potential liability for an on-the-job injury to the independent contractor. *See Elliott-Williams Co. v. Diaz,* 9 S.W.3d 801, 804 (Tex. 1999); *Pollard v. Mo. Pac. R.R.*, 759 S.W.2d 670, 670 (Tex. 1988) (per curiam). It is the right of control, and not the actual exercise of control, which gives rise to a duty to see that an independent contractor performs work in a safe manner. *Elliott-Williams*, 9 S.W.3d at 804; *Pollard*, 759 S.W.2d at 670.

The contractually retained right of control must be more than a general right. *See Bright,* 89 S.W.3d at 606. For a general contractor to be liable for its independent contractor's actions, it must have the right to control the means, methods, or details of the independent contractor's work. *Id.* (citing *Elliott-Williams*, 9 S.W.3d at 804). "[T]he right to control the work must extend to the 'operative detail' of the contractor's work." *Ellwood Texas Forge Corp.*, 214 S.W.3d at 701 (quoting *Chi Energy, Inc. v. Urias,* 156 S.W.3d 873, 880 (Tex. App.—El Paso 2005, pet. denied)). It is not enough that the owner has the right to order the work to stop and start or to inspect progress or receive reports. *See* Tex. Civ. Prac. & Rem. Code § 95.003(1); *Bright*, 89 S.W.3d at 606.

Further, the control must relate to the injury the negligence causes. *Elliott-Williams*, 9 S.W.3d at 804. To prove that the general contractor breached an applicable duty of care, a nexus must be shown between the general contractor's retained control and the condition or activity that caused the injury. *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 294 (Tex. 2004); *Mendez*, 967 S.W.2d at 357; *see also Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997). Stated another way, the defendant's duty is commensurate with the

6

control it retains over the independent contractor's work. *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 214 (Tex. 2008); *Mendez*, 967 S.W.2d 357. It is not enough to show that the defendant controlled one aspect of the independent contractor's activities if its employee's injury arose from another. *Khan*, 138 S.W.3d at 294.

Determining whether a contract gives a right of control is generally a question of law for the court rather than a question of fact for the jury. *Bright,* 89 S.W.3d at 606. We construe contracts as a whole in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Khan*, 138 S.W.3d at 292. No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Id.*

C

In his sole issue, Johnston contends the trial court erred in granting summary judgment because Oiltanking and Rodgers were parties to the master service agreement in which Oiltanking retained control over the "timing and sequence" of Rodgers' work, and therefore Oiltanking owed a duty to Rodgers and Johnston to see that Rodgers's employees performed their work in a safe manner under Supreme Court of Texas's opinion in *Redinger*. *See* 689 S.W.2d at 418 (holding that general contractor was liable for actions of independent contractor when the general contractor retained "the power to direct the order in which the work was to be done and to forbid the work being done in a dangerous manner").

The specific provision on which Johnston relies provides as follows:

III.    [Oiltanking's] REPRESENTATIVE

    [Rodgers] agrees to perform each phase of the work at the time and in the sequence requested by [Oiltanking's] Terminal Manager or his representative and subject to inspection continuously, or from time to time, by such Terminal Manager or his representative.

Johnston further contends that other terms in the agreement, when considered together, evidence Oiltanking's intent to reserve to itself a significant amount of control over the operative details of Rodgers' work, including the following:

IV.     PERSONNEL

In the event [Oiltanking] objects to any employee of [Rodgers], [Rodgers] shall remove such employee from [Oiltanking's] premises, but [Rodgers] shall have the exclusive right to hire and terminate its employees and may transfer or reassign any of its employees to other work of [Rodgers]. . . .

V.      MATERIALS, SUPPLIES, TOOLS AND EQUIPMENT

[Rodgers] will, if requested by [Oiltanking], furnish materials, supplies, tools and construction equipment required in the performance of work hereunder and will be compensated therefore in the manner hereinafter provided.

* * *

VII.    INSPECTION

A.      [Oiltanking] will provide an authorized representative prior to the commencement of any work hereunder who shall have authority to designate the work to be performed hereunder, to inspect such work and to determine questions which might arise between the parties relative to the execution of the work. The direction of the work by [Rodgers'] employees shall be under the exclusive control of [Rodgers]. [Rodgers] shall assign a competent job superintendent who will deal with [Oiltanking's] duly authorized representative on matters relating to the work to be performed and its proper execution.

B.      [Oiltanking] shall have the authority to stop the work whenever it deems such action necessary to secure the safe and proper performance of the work assignment.

Johnston maintains that, taking the agreement as a whole, Oiltanking retained control over the details of Rodgers' work. Johnston also asserts that testimony of Oiltanking employees confirms that Oiltanking maintained contractual control over the worksite, including

8

Rodgers' work, because these employees either acknowledged Oiltanking's contractual rights or agreed that Oiltanking had exercised its contractual rights.[3]

Johnston relies on *Redinger's* language that liability may be imposed on a party who retains the right to "direct the order in which the work [is] to be done." *See* 689 S.W.2d at 418. According to Johnston, Oiltanking's right to control the timing and sequence of Rodgers' work reflects "precisely the language that the *Redinger* court and its progeny have held sufficient to demonstrate a landowner or general contractor's control over the operative details of an independent contractor's work." In *Redinger,* there was evidence that the general contractor retained the power to direct the order in which the subcontractor's work was to be done and to forbid the performance of work in a dangerous manner. *Id.* The general contractor ordered the activity which resulted in the injury and also coordinated the work done by the subcontractor. *Id.* Based on these facts, the supreme court held that the general contractor owed a duty to exercise this control in a reasonable manner. *Id.* By controlling the timing and sequence of Rodgers' work, Johnston asserts, Oiltanking likewise maintained control over Rodgers.

We disagree with Johnston's argument because the right to schedule the timing and sequence of work is in the nature of a general right to coordinate the activities of contractors and others on its premises to complete a project. The right to direct when to start, stop, or resume work, or to prescribe alterations and deviations is not the type of supervisory control that would impose liability on the general contractor or premises owner. *See* RESTATEMENT (SECOND) OF TORTS § 414 cmt. c; *Mendez*, 967 S.W.2d at 356; *Redinger*, 689 S.W.2d at 418; *Ellwood Tex. Forge Corp.*, 214 S.W.3d at 699. Oiltanking must have some latitude to tell its independent contractors what to do, in general terms, and

---

[3] Oiltanking objects to testimony quoted from pages included in the appendix to Johnston's appellant brief that were not in the summary-judgment record. To the extent Johnston relies on documents or testimony not part of the record, we disregard it. *See Guarjardo v. Conwell*, 46 S.W.3d 862, 864 (Tex. 2001); *Nguyen v. Intertex, Inc*., 93 S.W.3d 288, 293 (Tex. App.—Houston [14th Dist.] 2002, no pet.).

may do so without becoming subject to liability. *See Koch Refining Co. v. Chapa*, 11 S.W.3d 153, 156 (Tex. 1999).

Further, the agreement expressly provides that Rodgers, not Oiltanking, is responsible for supervising and directing Rodgers' employees:

> II. <u>INDEPENDENT CONTRACTOR</u>
>
> A. [Rodgers] shall be an independent contractor with respect to all work performed hereunder, and neither [Rodgers] nor those employed by [Rodgers] to perform such work shall be deemed the agents, representatives, employees or servants of [Oiltanking] in the performance of such work or any part thereof, in any manner dealt with herein.
>
> B. [Rodgers] assumes full responsibility for supervising and directing its own employees. . . .

Similarly, paragraph VII.A, on which Johnston in part relies, provides that the direction of the work by Rodgers's employees shall be under the "exclusive control" of Rodgers.

Moreover, Johnston makes no claim that Oiltanking's right to direct the timing and sequence of the work had anything to with his injuries. Instead, Johnston argues that Oiltanking's contractual right to control the timing and sequence of the work imposes on Oiltanking an unqualified duty to protect Rodgers' employees from injury; therefore, once Johnston demonstrates that his injury was work related, he was not also required to demonstrate a relationship between the injury and Oiltanking's right to control Rodgers' work. Johnston asserts that to require such a showing would overstep the bounds of *Redinger* and conflict with those cases holding that once contractual control is shown, the actual exercise of that control becomes irrelevant. *See Elliott-Williams Co.* 9 S.W.3d at 804; *Pollard*, 759 S.W.2d at 670.

However, the Supreme Court of Texas has since made clear that there must be a nexus between the employer's retained control and the condition or activity that caused the injury. *Khan*, 138 S.W.3d at 293–94; *Bright*, 89 S.W.3d at 606; *Mendez*, 967 S.W.2d at 356; *see also Belteton v. Desco Steel Erectors & Concrete, Inc.*, 222 S.W.3d 600, 606

10

(Tex. App.—Houston [14th Dist.] 2007, no pet.). Many Texas cases have addressed whether a requirement that the independent contractor observe certain safety guidelines is sufficient control to give rise to a duty. *Belteton*, 222 S.W.3d at 606. The Supreme Court of Texas has explained that a premises owner, by requiring an independent contractor to follow its safety rules and regulations, does not owe the independent contractor's employees a duty to ensure that the employees do nothing unsafe. *Mendez,* 967 S.W.2d at 357–58. Instead, the premises owner assumes only a narrow duty to ensure that its rules or requirements do not unreasonably increase the probability and severity of injury. *Id.* at 358.

Applying the Supreme Court's reasoning to this case, even if Oiltanking's right to control the timing and sequence of Rodgers's work imposed a duty on it, the duty would not be an unqualified one, but rather a duty to see that its control of the timing and sequence of its independent contractor's work did not increase "the probability or severity of the injury." *See Mendez*, 967 S.W.2d at 358. Johnston makes no claims that the timing and sequence of Rodgers' work increased the probability or severity of his injury. Thus, even if a duty existed, no breach of duty relating to that obligation has been asserted or shown.

On the facts and circumstances presented here, we hold that as a matter of law the parties' agreement did not impose on Oiltanking a duty to ensure the safety of Rodgers' employees' work because Oiltanking did not retain the right to control the means, methods, or details of Rodgers' work, and there is no nexus between the alleged duty and Johnston's damages. *See Khan*, 138 S.W.3d at 293–94; *Bright*, 89 S.W.3d at 606–07; *Mendez*, 967 S.W.2d at 356; *Chapa*, 11 S.W.3d at 157; *see also Echartea v. Calpine Corp.*, No. 14-10-00019-CV, 2011 WL 2684889, at *4 (Tex. App.—Houston [14th Dist.] July 12, 2011, no pet.) (holding that contract specifying that general contractor would "provide overall site coordination and make assignments and decisions that best effect overall safety and overall progress of the project" was insufficient to raise fact issue on control); *Howerton v. Minn. Mining and Mfg., Inc.*, 133 S.W.3d 820, 825–27 (Tex. App.—Eastland

11

2004, no pet.) (holding that contract reserving to defendant the right to determine the sequence in which the independent contractor performed its work did not give rise to duty of care).

Accordingly, the trial court did not err in granting Oiltanking's motion for summary judgment.

\* \* \*

We overrule Johnston's issue and affirm the trial court's judgment.

/s/    Jeffrey V. Brown
       Justice

Panel consists of Justices Frost, Brown, and McCally