**Affirmed and Majority and Dissenting Opinions filed December 19, 2019.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-17-00977-CV

---

## BRAZOS CONTRACTORS DEVELOPMENT, INC., Appellant

## V.

## HENRY JEFFERSON, Appellee

---

**On Appeal from the 152nd District Court
Harris County, Texas
Trial Court Cause No. 2014-28653**

---

## DISSENTING OPINION

In this personal-injury case, general contractor Brazos Contractors Development, Inc. appeals the judgment rendered against it after a jury trial. I agree with Brazos that, as a matter of law, the Subcontract with T&T did not grant it the contractual right to control the manner in which T&T's employees or independent contractors performed their work but instead made T&T solely responsible for its workers' safety and for compliance with OSHA regulations. I therefore would reach

Brazos's argument that its contract with the property owner also did not give Brazos the right to control the methods by which T&T's employees performed the Subcontract. Because the majority does not, I respectfully dissent.

## I. GOVERNING LAW

A premises owner or general contractor ordinarily does not owe a duty of reasonable care to an independent contractor's employee.[1] *See Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 783 (Tex. 2001). But, a duty to see that an independent contractor performs its work in a safe manner can arise if the general contractor has the right to control the independent contractor's work. *See Dow Chem Co. v. Bright*, 89 S.W.3d 602, 606 (Tex. 2002).

For such a duty to arise, two conditions must be met. First, the general contractor "must have the right to control the means, methods, or details of the independent contractor's work," *id.*, or stated differently, "[t]he right to control the work must extend to the 'operative detail' of the contractor's work." *Ellwood Tex. Forge Corp. v. Jones*, 214 S.W.3d 693, 700 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (quoting *Chi Energy, Inc. v. Urias*, 156 S.W.3d 873, 880 (Tex. App.—El Paso 2005, pet. denied)). A "general right of control over operations" is insufficient. *Hoechst-Celanese Corp. v. Mendez*, 967 S.W.2d 354, 357 (Tex. 1998) (per curiam). Second, "the control must relate to the injury the negligence causes," *Dow Chem.*, 89 S.W.3d at 606, that is, the general contractor must have a "right of control over the injury-causing activity." *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 528 (Tex. 1997). Thus, to satisfy these two conditions, the claimant

---

[1] Because a premises owner and a general contractor owe the same duties to an independent contractor's employee, cases considering the duties of premises owners are equally applicable to cases concerning general contractors. *Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 155 n.1 (Tex. 1999) (per curiam).

must show that the general contractor had the right to control "the operative details" of "the injury-causing activity."

There are two ways to prove such a right of control: "first, by evidence of a contractual agreement that explicitly assigns the premises owner a right to control; and second, in the absence of a contractual agreement, by evidence that the premises owner actually exercised control over the manner in which the independent contractor's work was performed." *Dow Chem.*, 89 S.W.3d at 606. In response to Question 2 of the charge, the jury failed to find that Brazos exercised actual control over the manner in which T&T's workers installed the cross-braces. In answer to Question 4, the jury also failed to find Brazos liable under a negligent-undertaking theory of liability. Thus, Jefferson can recover against Brazos only if a contract provides the requisite right of control. Determining whether a contract gave the general contractor the right to control the operative details of the way in which the injury-causing activity was performed usually is a question of law for the court to decide, while determining whether the general contractor actually exercised control is ordinarily a question of fact for the jury. *See Lee Lewis Constr.*, 70 S.W.3d at 783.

## II. CONTRACTUAL RIGHT OF CONTROL UNDER THE SUBCONTRACT

In Question 1 of the charge, the jury was asked, "Did the negligence, if any, of Brazos Contractors Development, Inc. proximately cause the injuries sustained by Henry Jefferson?" The question was followed by the instruction, "For the purposes of this question only, you are instructed that Brazos Contractors Development, Inc. retained *some control* over the erection of the steel frame, other than the right to order the work to start or stop or to inspect progress or receive reports."[2] The jury answered, "Yes," and the trial court rendered judgment against Brazos based on that answer. The trial court did not define "some control." Contrary

---

[2] Emphasis added.

3

to the trial court's instruction, the majority opinion concludes that the contract granted "broad supervisory control" to Brazos. *Ante* at 12, 13.

According to the majority, the words "under the direction of David Kaszak" can have only one meaning, namely, that Kaszak "retained the right to guide, order, and instruct T&T with respect to its work." *Ante* at 13. There are at least two major problems with this reasoning.

First, both the Texas Supreme Court and this court repeatedly have stated that in negligent-activity cases, the contractual right of the requisite control must be "explicit." *See, e.g.*, *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 292 (Tex. 2004); *Dow Chem.*, 89 S.W.3d at 606; *Coastal Marine Serv. of Tex., Inc. v. Lawrence*, 988 S.W.2d 223, 226 (Tex. 1999) (per curiam); *Johnston v. Oiltanking Hous., L.P.*, 367 S.W.3d 412, 416 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Belteton v. Desco Steel Erectors & Concrete, Inc.*, 222 S.W.3d 600, 605 (Tex. App.—Houston [14th Dist.] 2007, no pet.). The right to "direct" or "order" T&T "with respect to its work" is not the test; rather, a general contractor assumes duties toward a subcontractor's employees only if the general contractor has the right to control the subcontractor's method of performing the activity that injured its employee. The mere use of the word "direction" does not explicitly give Brazos, through Kaszak, the right to control the operative details of the way in which T&T's workers would perform the Subcontract.

Second, the majority's reasoning contravenes several canons of contract construction that I believe compel the opposite conclusion.

**A    The word "direction" does not explicitly give Brazos the right to control the operative details of T&T's work.**

I begin, as the majority does, by defining relevant terms. A general contractor's retention of control over the details of a subcontractor's work must be

4

"explicit," and Black's Law Dictionary defines "explicit" as, "[c]lear, open, direct, or exact" or "[e]xpressed without ambiguity or vagueness; leaving no doubt." *Explicit*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see also* NEW OXFORD AMERICAN DICTIONARY 610 (Angus Stevenson & Christine Lindberg, eds., 3d ed. 2010) (defining *explicit* as "stated clearly and in detail, leaving no room for confusion or doubt").

### 1.      *"Direction" has a broader meaning.*

The majority has overlooked that "direction" also has a more general meaning. *See, e.g.*, *Direction*, BLACK'S LAW DICTIONARY ("The course on which something is aimed <the direction of the trial>."); NEW OXFORD AMERICAN DICTIONARY 491–92 (defining *direction* to include "a general way in which someone or something is developing" as well as "general aim or purpose"). Of particular significance here, the Oxford English Dictionary defines *direction* to include "of putting or keeping in the right way or course; guidance, conduct"; "of keeping in right order; management, administration"; and "[o]rderly arrangement or disposition of matters; arranged or ordered course; arrangement, order." THE COMPACT EDITION OF THE OXFORD ENGLISH DICTIONARY 735 (Oxford University Press 1971). A general contractor can have such broad general rights of direction without also assuming control over the operative details of the work. Because *direction* can be used in a broad or a narrow sense, the question is not whether the Subcontract gave Kaszak *any* right of direction, but whether the Subcontract gave him direction *over the operative details of the work.*[3] It did not.

_____

[3] I also disagree with the majority's assumption that "direction" must have been used as a synonym for "control" in the Subcontract based on the observation that the phrase "direction and control" is frequently used. The same observation also illustrates that the two words do not mean the same thing, because the phrase "direction and control" frequently appears in legislation. *See, e.g.*, TEX. AGRIC. CODE ANN. § 131.002; TEX. EDUC. CODE ANN. §§ 67.51, 67.61, 96.63; TEX. FIN. CODE ANN. §§ 35.107, 185.107; TEX. GOV'T CODE ANN. §§ 30.00009, 30.00736, 30.00778,

### 2. *"Direction" is used with this broader meaning in binding precedent.*

Both the Texas Supreme Court and this court have used the words "direct" or "direction" in describing the control that premises owners and general contractors permissibly can retain or exercise *without* subjecting themselves to liability. *See, e.g.*, *Gonzalez v. Ramirez*, 463 S.W.3d 499, 506 (Tex. 2015) (per curiam) ("[A]n owner or general contractor 'can *direct* when and where an independent contractor does the work and can request information and reports about the work' without assuming vicarious liability." (quoting *Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 792 (Tex. 2006))) (emphasis added); *Fifth Club*, 196 S.W.3d at 792 (no liability where "there was no evidence that Fifth Club gave more than general *directions* to West") (emphasis added); *Johnston*, 367 S.W.3d at 419 ("The right to *direct* when to start, stop, or resume work, or to prescribe alterations and deviations is not the type of supervisory control that would impose liability on the general contractor or premises owner.") (emphasis added).

One case cited by the majority illustrates this particularly well. In *Walker v. El Paso Electric Railway Co.*, 103 Tex. 259, 126 S.W. 262 (1910), Stone Webster Engineering Corporation and El Paso Electric Railway Company were working on the same site and each company permitted the other to borrow its employees. *Id.* at 261, 126 S.W. at 263. The Railway asked for assistance in fixing an electric dynamo, and Stone Webster's superintendent, Ralph, told his employee Walker to help. *Id.* During the repair, Jasmer, an employee of the Railway, injured Walker's hand. *Id.*

---

30.00818, 30.01513, 62.002, 447.001; Tex. Ins. Code Ann. §§ 823.354, 831.0012; Tex. Lab. Code Ann. §§ 91.032, 501.022; Tex. Loc. Gov't Code Ann. §§ 291.005, 561.002; Tex. Nat. Res. Code Ann. §§ 40.004, 40.005; Tex. Occ. Code Ann. §§ 165.157, 253.003. Because a court "must not interpret [a] statute in a manner that renders any part of the statute meaningless or superfluous," *Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008), the words "direction" and "control" in the phrase "direction and control" must mean different things.

Walker sued the Railway, but if he was acting as the Railway's servant at the time, then he was injured by a fellow servant and could not recover. *Id.*

Walker testified, "'I had my directions from Mr. Ralph, my employer, superintendent of the Stone-Webster Corporation. He directed me what to do on the old machine, and I followed his instructions.'" *Id.* at 262, 126 S.W. at 263. The Railway complained on appeal that the charge "omitted to state the issue of whether [Walker] was doing his work under the direction of his employer, Ralph." *Id.* But the court held, "*That* the work was to be done and how to do it is in our opinion a very different thing from directing the work *as* it was done." *Id.* (emphasis added). Walker did not state "[w]hen Ralph gave him directions as to the repair of the dynamo," or "that when he went to do the work Ralph went with him"; moreover, other witnesses testified that only Railway employees were present when the work was done. *Id.* Because "it appears that Ralph did not give him instructions as the work progressed," the court concluded that "the question of Ralph's direction was not an issue in the case." *Id.* at 262–63, 126 S.W. at 263–64.

Although *Walker* dealt with the borrowed-servant doctrine, the issue in that case, as it is here, was whether the means of performing the work that caused the plaintiff's injury was under the control of the plaintiff's employer or of another. And as *Walker* illustrates, there is nothing magical about the bare use of "direction" or similar words. Every premises owner or contractor may, without assuming additional duties toward a subcontractor's employees, retain or exercise the right to issue general "directions," "orders," or "instructions"—regardless of whether this right is mentioned in a contract. *See Koch Ref. Co. v. Chapa*, 11 S.W.3d 153, 156 (Tex. 1999) (per curiam) ("Every premises owner must have some latitude to tell its independent contractors what to do, in general terms, and may do so without becoming subject to liability." (citing *Redinger v. Living, Inc.*, 689 S.W.2d 415, 418

7

(Tex. 1985)); *Younger Bros. v. Moore*, 135 S.W.2d 780, 782 (Tex. App.—El Paso 1939, writ dism'd judgm't cor.) ("The determination of what work is to be done does not imply the right of directing how it was to be done." (citing *Walker*)). Thus, even construing the "direction" provision in isolation, I disagree with the majority's assumption that it explicitly gave Kaszak control over the way in which T&T's workers performed the Subcontract.

This brings me to the broader disagreement that I have with the majority's analysis: the canons of construction.

**B.**   **The canons of contract construction establish that the Subcontract did not reserve to Brazos a right of control over the way in which T&T performed the work or over T&T's workers' safety.**

As the foregoing illustrates, the question is not whether Kaszak, as Brazos's representative, had the right common to all general contractors to issue general directions for T&T's erection of the steel frame; rather, the pertinent question is whether the contract gave Kaszak an *additional* right: the right to direct the methods T&T used to erect the steel frame. In construing the Subcontract to answer that question, I would be guided by four intertwined canons of construction: (i) contractual provisions are to be harmonized, (ii) no provision is to be rendered meaningless, (iii) specific provisions control over general ones, and (iv) contracts are construed in light of the business activity to be served.

*1.*   *The "direction" provision must be harmonized with contractual provisions recognizing only Kaszak's general right of control.*

Courts are to construe a contract as a whole, harmonizing and giving effect to all of its provisions so that none is rendered meaningless. *See Frost Nat'l Bank v. L&F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam). In accordance with this canon, I would determine how "under the direction of David Kaszak" was used in the Subcontract by looking to other provisions that discuss the direction he

was to provide. Although Kaszak is not mentioned again in the Subcontract by name, he is referred to by his job description as superintendent or project manager in five provisions.

The first three provisions concern the payment schedule. The first of these is in the main body of the Subcontract and states,

> **PAYMENT SCHEDULE:** . . . To be processed for payment all draws and invoices must have Job #, CIF Line #, the drawn amount and the Superintendent's signed approval. . . . .

The next two such provisions are in the draw schedule incorporated in the Subcontract. In those, T&T and Brazos similarly agreed that

- All draws must be approved and signed by a Project Manager of Brazos Contractors Development Inc.
- All draws and original invoices shall be submitted to the Contractor's South Houston, Texas office for payment processing by the Project Manager according to the agreed terms.

Each of these three provisions addresses Brazos's payment procedures, not T&T's performance, so they do not give Kaszak the right to control the way in which T&T performs the Subcontract.

The fourth provision referring to Kaszak's role concerns change orders:

> **CHANGE ORDERS:** . . . . ***No Alterations or Changes shall be made Except upon Contractor's written order***. The amount to be paid by Contractor, or allowed by Subcontractor, as a result of such changes or alterations, shall be stated on such change order, or extra work performed ***Only if approved by Contractor with a signed (by Project Manager or Superintendent) field work order.*** The Subcontractor must submit a priced proposal for extra work to be signed by the Superintendent before the work is performed including required backup and markup percentage.[4]

---

[4] Boldface and italics in original.

This provision also fails to give Kaszak the requisite control. The Texas Supreme Court has repeatedly stated that "It is not enough that [the general contractor] has merely a general right . . . to prescribe alterations and deviations." *See, e.g.*, *Koch Ref.*, 11 S.W.3d at 155 (quoting RESTATEMENT (SECOND) OF TORTS § 414 cmt. c (1965)); *Hoechst-Celanese Corp.*, 967 S.W.2d at 356 (same). Thus, this provision pertains only to Brazos's general rights and not the right to control "the details or methods" of T&T's work. *See Fifth Club*, 196 S.W.3d at 792.

The final provision states only that Kaszak has the right to determine when T&T was to perform the contract:

> **CONSTRUCTION SCHEDULE:** Work to be performed on Superintendent's time schedule.

But, again, the Texas Supreme Court repeatedly has said that a general contractor "can direct *when* and where an independent contractor does the work" without assuming the degree of control necessary for liability. *Gonzalez*, 463 S.W.3d at 506 (emphasis added); *Fifth Club*, 196 S.W.3d at 792 (emphasis added).

Because we must construe a contract as a whole, harmonizing all of its provisions, I would hold that the phrase "under the direction of David Kaszak" means nothing more than that he is the person referred to elsewhere in the Subcontract as the project manager or superintendent and who exercises those general rights common to all general contractors.

2. *The "direction" provision must not be construed to render meaningless the provisions making the Subcontractor solely responsible for its workers' safety.*

I additionally would construe the Subcontract in accordance with the canon "to give effect to all of the words and provisions so that none is rendered meaningless." *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015).

10

Brazos could not have assumed the duty to take precautions for Jefferson's safety, because T&T retained that duty under this provision:

> **SAFETY REQUIREMENTS**: *Subcontractor shall take all necessary precautions for the safety of employees on the job/project,* and shall comply with all applicable provisions of federal, state, and municipal safety laws, ordinances, rules, regulations, building codes, and lawful orders of any public authority having jurisdiction for the health and safety of persons or property or [sic] *prevent accidents or injury to persons on, about or adjacent to the premises where the work is being performed* and to prevent loss or damage to property.[5]

To hold Brazos liable on the ground that Kaszak failed to prevent Jefferson's accident would be to render this provision meaningless.

The majority negates this section as relating only to safety[6]—but that, of course, is the question here. Did Brazos have the duty to keep Jefferson safe or to provide direction to him on safe methods of installing the cross-braces? If the answer is no, then Brazos is not liable for failing to prevent the accident, and the jury's answer to Question 1 is immaterial.

The case on which the majority relies does not answer that question, for it states only that "a premises owner who imposes safety requirements on its independent contractor . . . owes a duty that any safety requirements and procedures that that are promulgated do not 'unreasonably increase, rather than decrease, the probability and severity of injury.'" *Godines v. Parsley Energy Operations, LLC*, No. 11-16-00139-CV, 2018 WL 2460303, at *6 (Tex. App.—Eastland May 31, 2018, no pet.) (mem. op.) (quoting *Hoechst-Celanese Corp.*, 967 S.W.2d at 358). Moreover, *Godines* held, as I would hold here, that a contractual right of control requires "evidence of a contractual agreement that *explicitly* assigns the premises

---

[5] Emphasis added.

[6] *See ante* at 13–14.

11

owner a right to control." *Id.* at *5 (quoting *Dow Chem.*, 89 S.W.3d at 606) (emphasis added). That standard was not met in *Godines*, nor is it met here.

### 3.　More specific provisions control over general provisions.

It is well established that if two contractual provisions conflict, the general provision yields to the more specific provision. *See, e.g.*, *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994); *NuStar Energy, L.P. v. Diamond Offshore Co.*, 402 S.W.3d 461, 466 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Thus, even if I agreed with the majority that Brazos generally did retain control over the operative details of T&T's work, I nevertheless would conclude that the specific circumstances of Jefferson's injury fall within the following exception:

> **INDEMNITY PROVISION:** If Subcontractor uses equipment or tools owned or rented by Contractor, Subcontractor shall indemnify and hold harmless Contractor from any liability for all claims, which may result from Subcontractor's use of such equipment or tools. . . . *Subcontractor agrees to be solely responsible for safety, training, mechanical and safety devices, inspections and OSHA Compliance prior to equipment use.*[7]

In effect, the parties agreed that if T&T used equipment rented by Brazos, then T&T did so at its own risk.[8] It is undisputed that Brazos rented the forklift involved in Jefferson's accident, and as Jefferson concedes in his brief, "The use of the straight-mast forklift in an improper manner caused Jefferson's accident." Under this specific provision of the Subcontract, Brazos is absolved of any responsibility it might otherwise have had under the general "direction" language.

---

[7] Emphasis added.

[8] Contrary to the majority's suggestion, *ante* at 14 n.5, this provision is not limited to claims that result "solely from T&T's use of tools or equipment rented by Brazos." Under the Subcontract's unambiguous terms, it is sufficient that T&T "uses" the equipment.

### 4. The "direction" provision must be read in light of the business activity to be served, avoiding a construction that is unreasonable, inequitable, and oppressive.

Finally, contracts are to be construed bearing in mind the particular business activity to be served, and when possible and proper to do so, avoiding a construction that is unreasonable, inequitable, and oppressive. *See L&F Distribs., Ltd.*, 165 S.W.3d at 312. Every subcontract on this project contained the same "under the direction of David Kaszak" language, and it is unreasonable to suppose that this language was used to require him to personally supervise the operative details of every task performed on the site.

For each of these reasons independently, I disagree with the majority's analysis. I instead would conclude that, under the terms of the Subcontract, and as a matter of law, Brazos assumed no control over—and thus, no responsibility for—T&T's workers' safety, their use of the rented forklift, their training in how to properly use a forklift to install cross-braces, or the operative details of their work.

## IV. Conclusion

I would hold that the Subcontract did not grant Brazos, through Kaszak, the right to control the details of the way in which T&T's workers performed their work, and I accordingly would consider Brazos's argument that its contract with the property owner also does not grant it such a right of control. Because the majority does not, I respectfully dissent.

/s/    Tracy Christopher
Justice

Panel consists of Justices Christopher, Hassan, and Poissant (Hassan, J., majority).