

# NUMBER 13-21-00460-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

**K & K INEZ PROPERTIES, LLC,
DAVID KUCERA, AND
VALERIE KUCERA,**                                                                    **Appellants,**

**v.**

**CLAY KOLLE AND LACY KOLLE,**                                              **Appellees.**

**On appeal from the 135th District Court
of Victoria County, Texas.**

# MEMORANDUM OPINION

**Before Justices Benavides, Tijerina, and Peña
Memorandum Opinion by Justice Tijerina**

Appellants K & K Inez Properties, LLC, (K&K), David Kucera, and Valerie Kucera[1]

appeal a jury verdict in favor of appellees, Clay Kolle and Lacy Kolle. By seven issues

that we have renumbered and reorganized, appellants contend that (1) the evidence is

---

[1] David and Valerie are married, and David is the sole member of K&K.

legally and factually insufficient to support many of the jury's findings, (2) the trial court erred by not including appellants' proposed question in the jury charge regarding appellees' negligence, (3) the trial court erred by granting appellees' motion to strike Victoria County as a responsible third party (RTP), (4) "the [trial] court erred in awarding [appellees] not only damages for diminished fair market value, but also damage[s] for past and future loss of use of their real property"; (5) "the [trial] court erred in awarding joint and severable liability against K&K and Valerie"; (6) "the [trial] court erred in computing the recovery of punitive damages," and (7) "[t]here is no alternative basis for affirming the trial court's judgment." We reverse and render in part and affirm in part.

## I.  PROCEDURAL BACKGROUND

Appellees, who are married, own approximately 126 acres of land northwest of Inez, Texas. They have a home on a portion of the land and use the rest of the land for grazing cattle. The evidence showed that when appellees purchased the land in 2013, the surface water drained properly on the property, which was consistent with the natural northwest to southeast pattern. Appellants owned an adjacent property to the east of appellees' property. The water from appellees' property drained to an unnamed tributary to Leona Creek, which passes through appellants' property. Appellants developed this portion of their property into a residential neighborhood known as Pura Vida. Appellants own parts of Pura Vida and maintain an easement that runs along the boundary of Pura Vida next to appellees' property.

Appellees sued appellants, in pertinent part, for nuisance and trespass; appellees also accused Valerie of engaging in a conspiracy. Specifically, appellees complained, as

2

relevant here, that appellants improperly and illegally constructed a berm and dam on their property that impounded and pushed back surface water onto appellees' property; that the dam and berm prevented the natural flow of water through the unnamed tributary; and that appellants intentionally diverted the flow of water, causing the impoundment and accumulation of surface water on appellees' property. A jury trial was held.

After hearing the evidence, the jury found as discussed in further detail below, among other things, that appellants had caused a nuisance and Valerie had engaged in a conspiracy. The jury found that David and K&K were each forty percent responsible, and Valerie was twenty percent responsible. The jury awarded appellees economic damages of $175,000 in diminution in market value of their property and $250,000 in past and future loss-of-use damages. The jury found that David and K&K committed gross negligence. The jury ordered David to pay Clay $250,000 in exemplary damages and $500,000 in exemplary damages to Lacy, and it ordered K&K to pay Clay and Lacy each $250,000 in exemplary damages.

The trial court entered judgment on the verdict. It ordered, in pertinent part, for David to pay $170,000, K&K to pay $170,000, and Valerie to pay $85,000 in economic damages. The trial court held Valerie and K&K jointly and severally liable for the entire $425,000 of economic damages. The trial court ordered that both David and K&K each pay exemplary damages of $200,000 to Clay and $200,000 to Lacy. This appeal followed.

## II.    SUFFICIENCY OF THE EVIDENCE

By their first issue and by what we construe as several sub-issues, appellants contend that "[t]he evidence was insufficient to support several key findings by the jury."

3

Specifically, appellants argue that there is legally and/or factually insufficient evidence to support: (1) a finding that "Valerie created a nuisance"; (2) a finding that Valerie engaged in a conspiracy; (3) the apportionment of responsibility; (4) "separate punitive damage awards against David and K&K"; and (5) the amount of punitive damages awarded.

## A.      Standard of Review

A "no evidence" or legal insufficiency challenge is a question of law challenging the sufficiency of the evidence to support a particular fact finding. *In re Estate of Livingston*, 999 S.W.2d 874, 879 (Tex. App.—El Paso 1999, no pet.). The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We review the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not. *Id*. at 821–22, 827. If the evidence at trial "would enable reasonable and fair-minded people to differ in their conclusions," we will not substitute our judgment for that of the factfinder. *Id.* at 822.

A no-evidence point will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *see City of Keller*, 168 S.W.3d at 810. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a

4

fact, and the legal effect is that there is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

In reviewing a factual-sufficiency challenge to a finding on an issue on which the appellant did not have the burden of proof, we will set aside the verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). We examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding in our factual sufficiency review. *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We must weigh all the evidence, not just that evidence which supports the verdict. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *Mar. Overseas Corp.*, 971 S.W.2d at 406–07. If we determine that the evidence is factually insufficient to support the jury's findings, we must "detail the evidence relevant to the issue" and "state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict." *Dow Chem. Co.*, 46 S.W.3d at 242.

Whether reviewing the legal or factual sufficiency of the evidence, the jurors are the sole judges of the credibility of the witnesses and the weight to be given their testimony. *City of Keller*, 168 S.W.3d at 819. The amount of evidence necessary to affirm is far less than the amount necessary to reverse a judgment. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). We must show deference to the jury's resolution of conflicts in the evidence, and we must presume that the jury resolved all conflicts in favor of the verdict. *City of Keller*, 168 S.W.3d at 820–21. We may not substitute our own judgment for that of the jury, even

if we would reach a different answer based on the evidence. *GTE Mobilnet of S. Tex. Ltd. P'ship*, 61 S.W.3d at 616 (citing *Mar. Overseas Corp.*, 971 S.W.2d at 407).

## B. Finding that Valerie Created a Nuisance

By their first issue, appellants contend that "[t]he evidence was legally and factually insufficient to support the jury's finding that Valerie created a nuisance." Specifically, appellants argue that the evidence "arguably" supports a finding that David created the alleged nuisance of flooding appellees' property by building a berm and a dam; however, there is "no evidence of any actions taken by Valerie." Appellants assert that although Valerie "may have been an owner of K&K by virtue of her marriage, or an officer, or that she was a loving wife who supported her husband's actions on the part of K&K," this evidence is "woefully insufficient to show, either directly or circumstantially, that [Valerie] played any part individually in creating a nuisance." Appellees respond that the evidence sufficiently supports the jury's finding that Valerie contributed to creating the nuisance because when K&K transferred ownership of part of appellants' property to Valerie that contained a portion of the berm, "Valerie continued to maintain the berm on her property and thus created a nuisance when the berm on the property she owned caused water to be impounded on" appellees' property.

### 1. Nuisance

"A 'nuisance' is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to use and enjoy it." *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 593 (Tex. 2016) (quoting *Holubec v. Brandenberger*, 111 S.W.3d 32, 37

6

(Tex. 2003)). A private nuisance includes the following elements:

> (1) the plaintiff had an interest in the land; (2) the defendant interfered with or invaded the plaintiff's interest by conduct that was negligent, intentional, or abnormal and out of place in its surroundings; (3) the defendant's conduct resulted in a condition that substantially interfered with the plaintiff's use and enjoyment of his land; and (4) the nuisance caused injury to the plaintiff.

*Cerny v. Marathon Oil Corp.*, 480 S.W.3d 612, 622 (Tex. App.—San Antonio 2015, pet. denied). The Texas Supreme Court clarified "that the term 'nuisance' does not refer to the 'wrongful act' or to the 'resulting damages,' but only to the legal injury—the interference with the use and enjoyment of property—that may result from the wrongful act and result in the compensable damages." *Crosstex N. Tex. Pipeline, L.P.*, 505 S.W.3d at 595.

A defendant may be held liable for intentionally causing a nuisance. *Id.* at 605. The intent necessary contemplates that "the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Id.* "[A] defendant may be held liable for intentionally causing a nuisance based on proof that he intentionally created or maintained a condition that substantially interferes with the claimant's use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities attempting to sue and enjoy it." *Id.* at 604–05.

A defendant may also be held liable for negligently causing a nuisance. *Id.* at 607. "In this category, the claim is governed by ordinary negligence principles. The elements the plaintiff must prove are 'the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach.'" *Id.* (quoting *IHS Cedars Treatment Ctr., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)).

7

## 2.  Analysis

Question 2 in the jury charge asked, "Did any of those named below, [(Valerie, David, and K&K)] intentionally create a private nuisance." The instructions to Question 2 were as follows:

> A person creates a "private nuisance" if their conduct substantially interferes with [appellees'] use and enjoyment of their land.
>
> "Substantial interference" means that a person's conduct must cause unreasonable discomfort or annoyance to a person of ordinary sensibilities attempting to use and enjoy the person's land. It is more than a slight inconvenience or petty annoyance.

Appellants focus their argument on their belief that Valerie's maintenance of the berm on her own property is not considered a nuisance in itself because she did not personally create the berm. However, during the trial and in their pleadings, appellees claimed that appellants created a nuisance by causing flooding and impounding of water on their property. Appellees' allegations of a nuisance were not solely based on that fact that David built a berm or a dam on his property. Instead, appellees claimed that the berm and the dam, among other things, caused the nuisance of flooding. They did not claim that the berm and dam themselves constituted a nuisance.

Appellees continuously focused their complaint of a nuisance to the impoundment of water or flooding on their property, which they claimed prevented them from using and enjoying their property. Thus, appellees did not allege that Valerie created a nuisance merely because she owned property containing the berm that caused their property to flood. Instead, they alleged, and the jury found, that by not removing the berm after purchasing the property, she created the nuisance of flooding or impoundment of water

8

on appellees' property because her conduct substantially interfered with appellees' use and enjoyment of their land. Appellants do not specifically challenge this finding.

Nonetheless, there is evidence in the record that prior to purchasing the property from K&K, Valerie personally witnessed the flooding on appellees' property. *See Crosstex N. Tex. Pipeline, L.P.*, 505 S.W.3d at 604–05. In addition, there was evidence that when she purchased this property from K&K, Valerie was aware that appellees were alleging that the berm, among other things, had caused the flooding because appellees had already sued David and K&K on that basis. *See id.* The evidence showed that nonetheless, Valerie did not remove the berm and allowed the berm on her property to be augmented, which then caused more flooding on appellees' property. *See id.* After reviewing the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not, we conclude that there is legally sufficient evidence to support a finding that Valerie created or maintained a nuisance. *See City of Keller*, 168 S.W.3d at 821–22, 827; *see also Crosstex N. Tex. Pipeline, L.P.*, 505 S.W.3d at 604–05.

Although appellants state that the evidence is factually insufficient, they have not provided any legal analysis of that issue, and they do not point to any contrary evidence in the record that makes the jury's finding on this issue factually insufficient. *See* TEX. R. APP. P. 38.1(i); *Lowry v. Tarbox*, 537 S.W.3d 599, 614 (Tex. App.—San Antonio 2017, pet. denied) (Appellants purport to challenge the legal and factual sufficiency of the evidence to support the jury's finding of fraud damages. However, appellants argue only that there is no evidence to support the jury's finding. For this reason, any intended

factual-sufficiency challenge is inadequately briefed and will not be addressed."). "When appellants fail to discuss the evidence supporting their claim or apply the law to the facts, they present nothing for review." *Lowry*, 537 S.W.3d at 620. Moreover, to reverse a verdict for factual insufficiency, we must "detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust, shock the conscience, or clearly demonstrates bias." *Windrum v. Kareh*, 581 S.W.3d 761, 781 (Tex. 2019); *Dow Chem. Co.*, 46 S.W.3d at 242. We are not required to scour this voluminous record to find evidence which goes against the jury's finding that Valerie created a nuisance. *See Keyes Helium Co. v. Regency Gas Servs., L.P.*, 393 S.W.3d 858, 861 (Tex. App.—Dallas 2012, no pet.) ("This court does not have a duty to review a voluminous record without guidance from the appellant to determine whether its assertion of reversible error is valid."); *see also Lloyds v. Vega*, No. 13-16-00090-CV, 2018 WL 1773304, at *13 (Tex. App.—Corpus Christi–Edinburg Apr. 12, 2018, no pet.) (mem. op.) ("Because we have no duty to scour the record to support State Farm's factual sufficiency challenges, we are unable to detail all the evidence relevant to the issue and clearly state why the jury's findings are factually insufficient or so against the great weight and preponderance of the evidence that is manifestly unjust."). Without guidance from the appellants, we are unable to do so. *See id.* Therefore, in this case, we are unable to conclude that the evidence is factually insufficient to support the challenged finding. *See Keyes Helium Co.*, 393 S.W.3d at 861; *Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.) ("An appellate court has no duty-or even right-to perform an independent review of the record and

applicable law to determine whether there was error."); *see also N&A Properties, Inc. v. PH Steel, Inc.*, 656 S.W.3d 556, 570 (Tex. App.—El Paso 2022, no pet.) (concluding that the appellant failed to properly brief her factual sufficiency issue by only including "a single sentence challenge to factual sufficiency."). Accordingly, viewing the entire record and weighing all the evidence, we are unable to conclude that the jury's finding "is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Cain*, 709 S.W.2d at 176; *see also Mar. Overseas Corp. v. Ellis*, 971 S.W.2d at 406–07. We overrule this issue.

## C. Finding that Valerie Conspired

By a first sub-issue to their first issue, appellants contend that "the evidence is insufficient [to support a finding] that Valerie was a conspirator."

### 1. Applicable Law

The charge asked the jury to determine whether Valerie conspired to cause damages to appellees' property. The charged instructed that "[t]o be part of a conspiracy, [Valerie] and another person or persons must have had knowledge of, agreed to, and intended a common objective or course of action that resulted in the damages to [appellees]. One or more persons involved in the conspiracy must have performed some act or acts to further the conspiracy." We must evaluate the sufficiency of the evidence based on the charge given when neither party objects to it. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000).

"Conspiracy may be established by circumstantial evidence." *Lesikar v. Rappeport*, 33 S.W.3d 282, 302 (Tex. App.—Texarkana, pet. denied). "A conspiracy may

11

be proven as well by the acts of the conspirators, as by anything they may say, touching what they intended to do." *Id.* (quoting *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 581 (Tex. 1963)).

### 2. Analysis

Appellants do not challenge the jury's finding that David caused a nuisance. Thus, the only question before us is whether there is legally sufficient evidence that Valerie had knowledge of, agreed to, and intended for David to have created a nuisance that resulted in the damages. *See Triplex Commun'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995) (discussing the elements of civil conspiracy).

At trial, appellees' theory of the case was that appellants caused a nuisance on their property by performing several activities that caused water to flood their property and to stay on their property for long periods.[2] Appellees presented evidence that appellants also placed items along the fence line including among other things, a sprayer truck, jet skis, old tires, and other junk. Appellees claimed that David dug ditches, filled culverts with junk and dirt, and built a dam and berms on his property which interfered with the natural flow of the water that then caused flooding and impounding of water on appellees' property. Appellees presented evidence that Valerie's failure to remove the berm from her property improperly altered the drainage of water, which contributed to the nuisance. According to appellees, appellants' acts of causing their property to flood and not drain properly resulted in dead trees on their property and the loss of enjoyment of

---

[2] "[T]he term 'nuisance' refers not to a defendant's conduct or to a legal claim or cause of action but to a type of legal injury involving interference with the use and enjoyment of real property. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 588 (Tex. 2016).

12

the property. Appellees alleged that Valerie conspired with David in the common objective of causing their property to flood and causing drainage issues.

David's employee, Matthew Nelson, stated that David told him that David redirected the path of a creek to prevent the creek from flooding David's house, which David had built directly next to a floodplain. Nelson further testified that David told him to fill some ditches to "show" appellees "what it's like without them and really flood them out." Additionally, Nelson stated that David told him that he had placed junk along the fence line "to give [appellees] something ugly to stare at." According to Nelson, David instructed him to hang green tarps on the fence line because David wanted to prevent appellees from "see[ing] what [David was] doing."

David acknowledged that he had been "building [the berms] up" on his property since 2016, even though he knew that appellees' property was flooding. David denied that his own engineer told him not to build the berms, denied any knowledge of needing to remove the berms, and denied that appellees' attorney sent him a letter informing him that the berms and certain ditches needed to be removed. Nonetheless, appellees presented evidence contradicting David's denials.

David stated that Valerie, who did not testify at trial, had not been a defendant until K&K sold ninety-nine acres of the property to Valerie. Fifty acres located on the ninety-nine-acre property contained the berm that caused water to flood appellees' property. Thus, the evidence showed that it was *after* appellees sued David and K&K for causing the flooding on their property, Valerie purchased a portion of the property that contained the berm.

13

When appellees asked David about junk that he placed in a ditch and about other decisions he made that caused flooding, David continuously used the term, "we." For example, he said,

> We were adding in a—more or less a filter because the culvert pipe just goes all the way to the fence, so [appellees] had a little bit of debris fall against the culvert pipe, it will get stopped up, so I done this [sic] which resets the culvert back three feet and creates, more or less, a filter which cannot get stopped up to help the water flow, keep flowing off their property.

David denied that appellants had "stuck all this junk on the [appellees'] fence line," and claimed appellants' acts were not related to flooding appellees' property. The jury was free to disbelieve this testimony and believe Nelson that appellant placed the junk on his property to "to give [appellees] something ugly to stare at," to prevent the natural flow of water from flooding appellants' house, and to "show" appellees "what it's like without them and really flood them out." *See City of Keller*, 168 S.W.3d at 819.

Regarding Exhibit 114, which shows that appellants were "hauling more dirt over towards the dam and berm on" their property, David said, "Now, where we were hauling it to, I can't say for sure," and "[w]e might be feeding some cows at that time. I don't know." When confronted with evidence that someone on his property was operating his tractor on dry land and placing more dirt in the ditch, while appellees' property was flooded, David replied, "[W]e're not blocking water anywhere. We're slowing the water down. We're not blocking the water."

David denied that appellants were placing dirt in a ditch to keep the water from appellees' property from "getting down to [his] house." David contradicted Nelson's testimony that David redirected the path of a creek to prevent the creek from flooding

14

appellants' house. When discussing why he had brought more dirt on dump trucks onto his property, David said, "*We* were just doing repairs, again, from the washout, so *we* were doing repair work." (Emphasis added).

Evidence was presented that after Valerie purchased her portion of the property, she also placed junk on the fence line, and the trial court admitted pictures of the junk. David testified that this junk on Valerie's property was removed one week prior to the trial. From this evidence, the jury was free to infer that Valerie like David placed the junk on the fence line "to give [appellees] something ugly to stare at" and thereafter removed the junk one week prior to trial. *See id.*

Additionally, evidence was presented that Valerie sent a text to members of an adjacent subdivision owned by appellants named, Pura Vida, informing them that David built the dam in accordance with the specifications as set out by the Texas Commission on Environmental Quality (TCEQ) and Brice Thomas, a "watermaster" from TCEQ who had contacted David informing him of a complaint by appellees that there was water on their property. The evidence shows that Valerie's statements in the texts were false because TCEQ does not provide specifications for dams and Thomas had not in fact stated that the dam was properly built. David acknowledged that Thomas stated that David had not complied with Thomas's specifications when he built the dam. Thus, the jury could have reasonably inferred that Valerie knew that the dam was improperly constructed and sought to deceive the residents of Pura Vida about the safety of the dam because she had agreed with David to "flood [appellees] out." *See id.*

According to David, he and Valerie were "trying to accomplish the same thing." Appellants argue this meant that Valerie merely wanted their business to succeed and that nothing in the record proves that David meant that Valerie intended to cause damages to appellees. However, based on evidence that, Valerie placed junk on the fence line after she purchased the property, just like David had previously done to provide something "ugly" for appellees to see and evidence that Valerie falsely claimed that David built the dam in compliance with TCEQ specifications, the jury could have reasonably inferred that Valerie was aware of David's acts. The jury could have further inferred that when David said *we* were "trying to accomplish the same thing," Valerie had agreed with his acts and intended to give appellees' something "ugly" to look at and intended to flood them out just as David told Nelson he intended to do. Therefore, after reviewing the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not, we conclude that there is legally sufficient evidence that Valerie was a conspirator. *See id.* at 821–22, 827.

Although appellants state that the evidence is factually insufficient to support the jury's finding that she acted as a conspirator, they do not point to any contrary evidence in the record that makes the jury's finding on this issue factually insufficient. *See* TEX. R. APP. P. 38.1(i); *Manning v. Johnson*, 642 S.W.3d 871, 884–85 (Tex. App.—Texarkana 2021, no pet.) ("Bare assertions of error, without argument or authority, waive error . . . . This rule also applies to complaints about the sufficiency of the evidence."). Moreover, we are required to set out the facts that make this finding factually insufficient:

16

however, without assistance from appellants, we are unable to do so. *See Windrum*, 581 S.W.3d at 781; *see also Lloyds*, 2018 WL 1773304, at *13. Accordingly, we overrule this issue.[3]

## D.    Apportionment of Responsibility

By a second sub-issue to their first issue, appellants contend that the evidence is legally insufficient to support the jury's answer to Question 7 regarding the apportionment of responsibility as follows: (1) forty percent to David; (2) twenty percent to Valerie; and (3) forty percent to K&K. Specifically, appellants argue that there is insufficient evidence to support (1) "any assignment of responsibility to Valerie"; and (2) "separate percentages for K&K and David" because "determining percentages of liability does not apply to a defendant whose liability is purely vicarious."

The charge instructed the jury to answer Question 7 if it "answered 'Yes' to any part of Questions 1, 2, 3, 4, or 5, for more than one of those named below . . . Assign percentages of responsibility only to those you found caused or contributed to cause the harm" to appellees' property. The jury answered yes to question 1, 2, 3, 4, and 5 finding

---

[3] Appellants argue that as a matter of law, they were unable to conspire with K&K because of their status as corporate agents. However, this argument has been waived because appellants did not make this argument in the trial court or request such a question for the jury, and appellants do not explain how we are able to reverse the judgment on a ground not argued in the trial court. *See First Nat. Collection Bureau, Inc. v. Walker*, 348 S.W.3d 329, 337 (Tex. App.—Dallas 2011, pet. denied) ("To preserve error for a legal sufficiency issue as to a jury trial, 'the appellant must raise the issue through one of the following: (1) a motion for directed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the question to the jury; (4) a motion to disregard the jury's answer to a vital fact question; or (5) a motion for new trial.'" (citing *Martin v. Martin*, 326 S.W.3d 741, 746–47 (Tex. App.—Texarkana 2010, pet. denied)); *see also Grisel v. Everest Int'l, LLC*, No. 02-19-00401-CV, 2022 WL 714516, at *15 (Tex. App.—Fort Worth Mar. 10, 2022, pet. denied) ("Defendants did not raise this matter-of-law point in the trial court. As noted, to preserve a matter-of-law issue for our review, the Defendants were required to raise it in the trial court through one or more of the five methods we listed previously.")). Moreover, the jury was not asked to determine whether K&K engaged in a conspiracy, and there is no such conclusion by the trial court in the judgment.

that appellants violated the Texas Water Code, engaged in a conspiracy to cause damages, committed a trespass, created a nuisance, and negligently created a private nuisance.

### 1. K&K

First, appellants state that the trial court was barred by the rule of law "that determining percentages of liability does not apply to a defendant whose liability is purely vicarious." *See Pierre v. Swearingen*, 331 S.W.3d 150, 154 (Tex. App.—Dallas 2011, no pet.) (concluding that the trial court did not err in rendering judgment against the appellants jointly and severally because one appellant's liability was "purely derivative and its level of negligence is considered to be commensurate with that of" the other appellant). Appellants state, "In order to apportion separate percentages of responsibility, therefore, there must be sufficient evidence of not only vicarious liability, but direct liability as well." Therefore, as we understand it, it appears that appellants argue that because K&K was merely vicariously liable, the trial court's question asking the jury to apportion responsibility should have been supported by evidence of K&K's direct liability. Thus, it appears that part of appellants' complaint goes to the form of the question asked as opposed to the sufficiency of the evidence.

To the extent that appellants' argument attacks the question given, it lacks merit because in the trial court, appellants requested that the trial court include in the charge a question regarding the percentage of responsibility of each party including David and K&K. The trial court included such a question in the jury charge. This is considered invited error, and appellants are not allowed to complain of error that they invited. *See HNMC,*

18

*Inc. v. Chan*, 637 S.W.3d 919, 936–37 (Tex. App.—Houston [14th Dist.] 2021, pet. granted). ("The invited error doctrine holds that 'a party cannot complain on appeal that the trial court took a specific action that the complaining party requested.' Thus, a party cannot encourage a trial court to submit a jury question in a particular form and then contend on appeal that the charge was erroneous.").

Additionally, appellants did not argue in the trial court that separate percentages as to David and K&K were prohibited because liability was purely vicarious, and they did not request a question regarding vicarious liability. *See First Nat. Collection Bureau, Inc. v. Walker*, 348 S.W.3d 329, 337 (Tex. App.—Dallas 2011, pet. denied). Appellants do not argue on appeal that the evidence did not conclusively establish vicarious liability. *See* TEX. R. APP. P. 38.1(i). Therefore, appellants have waived this issue. *See id.* (citing *Martin v. Martin*, 326 S.W.3d 741, 746–47 (Tex. App.—Texarkana 2010, pet. denied)); *see also Los Compadres Pescadores, L.L.C. v. Valdez*, 608 S.W.3d 829, 839 (Tex. App.—Corpus Christi–Edinburg 2019), *aff'd*, 622 S.W.3d 771 (Tex. 2021) ("Rule 279 'provides that, unless the issue was conclusively established by the evidence, a party's failure to submit a properly worded issue, or to object to its omission, results in waiver.'"); *Minnesota Min. & Mfg. Co. v. Nishika Ltd.*, 885 S.W.2d 603, 638 (Tex. App.—Beaumont 1994), *rev'd on other grounds*, 953 S.W.2d 733 (Tex. 1997); *Grisel v. Everest Int'l, LLC*, No. 02-19-00401-CV, 2022 WL 714516, at *15 (Tex. App.—Fort Worth Mar. 10, 2022, pet. denied) (mem. op.).

Moreover, we must analyze the legally sufficiency of the evidence by the question provided to the jury. *Osterberg*, 12 S.W.3d at 55 (citations omitted) ("[I]t is the court's

19

charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge."). And here, instead of asking for a question regarding vicarious liability, appellants sought a question about K&K's and David's individual liability. Appellees provided evidence that David acted partly in his own interest and partly in the interest of K&K. There was evidence that David set up the berm and dam to protect his personal residence from flooding and that David acted on K&K's behalf to protect Pura Vida from flooding. Thus, viewing the evidence in the light most favorable to the verdict, if a reasonable factfinder could and disregarding any contrary evidence unless a reasonable factfinder could not, we cannot conclude that the evidence is legally insufficient to support a finding that K&K was individually liable for the flooding. *See City of Keller*, 168 S.W.3d at 821–22, 827. We overrule appellants' second sub-issue to their first issue.

### 2. Valerie

Next, by what we construe as a third sub-issue, although appellants state that there is factually insufficient evidence to support any apportionment of responsibility to Valerie, they do not provide any legal argument with citation to appropriate authority explaining why Valerie should not be apportioned any responsibility when the jury found she violated the Texas Water Code, engaged in a conspiracy to cause damages, committed a trespass, created a nuisance, and negligently created a private nuisance. *See* TEX. R. APP. P. 38.1(i); *Interest of A.B.*, 646 S.W.3d 83, 96 (Tex. App.—Texarkana 2022, pet. denied) (concluding that the Mother waived her legal and factual sufficiency claim "because without any explanation of how the evidence fails to meet this evidentiary

standard and without any discussion of the evidence whatsoever," she "fail[ed] to set out a clear and concise argument for this contention"). It is the appellants' burden to establish that the finding is not support by factually sufficient evidence. *Zhang v. Capital Plastic & Bags, Inc.*, 587 S.W.3d 82, 91 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *see also Lloyds*, 2018 WL 1773304, at *13. Here, without guidance from appellants, we are unable to determine which finding is against the great weight and preponderance of the evidence. *See Zhang*, 587 S.W.3d at 91. Moreover, as stated above, appellants have not shown that Question 7 was erroneous. We overrule appellants' third sub-issue.

## E. Separate Award of Punitive Damages Against David and K&K

By a fourth sub-issue to their first issue, appellants contend that "[t]he evidence is factually and legally insufficient to support separate punitive damage awards against David and K&K and the amounts awarded are excessive, both constitutionally and as a factual matter."[4] Appellants base this argument on a belief that the proportionate responsibility question should not have asked the jury to determine actual damages caused by David and K&K. However, appellants have not met their appellate burden to show that Question 7 was improper with citation to proper authority and legal analysis. *See* TEX. R. APP. P. 38.1(i). Accordingly, we overrule appellants' fourth sub-issue to their first issue.

## III. APPELLEES' NEGLIGENCE

By their second issue, appellants contend that the trial court should have included

---

[4] Appellants generally allege in the title to this issue that "the amounts awarded are excessive, both constitutionally and as a factual matter." However, appellants have not provided legal analysis with citation to pertinent authority to support this general allegation. Therefore, we conclude it is inadequately briefed. *See* TEX. R. APP. P. 38.1(i).

a question regarding appellees' negligence in the jury charge.[5] An affirmative answer on a question regarding appellees' negligence would have allowed the jury to then apportion appellees' responsibility, if any, in causing the damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.003 (establishing that the jury "shall determine the percentage of responsibility . . . [of] each person's [fault in] causing or contributing to cause in any way the harm for which recovery of damages is sought, whether by negligent act or omission").

At the charge conference and in their written requests for jury questions, appellants requested the following: "Did negligence by [appellees], if any, proximately cause injury to [appellees'] property? Answer 'Yes' or 'No.'" Additionally, at the charge conference appellants stated, "we believe that there's sufficient evidence in the record to submit a question for *negligence*" because appellees instructed "the bulldozer operator to drive a bulldozer right next to their trees," "authorized the use of the herbicides near their oak

---

[5] Appellants use, among other things, the term "contributory negligence" in their brief in describing appellees' alleged negligence. The doctrine of contributory negligence is no longer a viable defense in Texas. *See Abalos v. Oil Dev. Co. of Tex.*, 544 S.W.2d 627, 632 (Tex. 1976) ("The Legislature of Texas has now abolished contributory negligence as an absolute bar and has substituted the doctrine of comparative negligence."); *Quintana v. CrossFit Dall., L.L.C.*, 347 S.W.3d 445, 452 (Tex. App.—Dallas 2011, no pet.) ("With the adoption of [c]omparative negligence, the defense of contributory negligence and the defense of 'Assumption of Risk' were both merged with comparative negligence and those defenses were abolished in Texas as confirmed in *Farley v. MM Cattle Co.*, 529 S.W.2d 751 (Tex. 1975)" (internal quotations omitted)); *see also Nabors Well Servs., Ltd. v. Romero*, 456 S.W.3d 553, 559 (Tex. 2015) ("Under contributory negligence, if a plaintiff was even one percent at fault, he or she could not recover.") (cleaned up). To support this issue, appellants cite only to authority concerning the doctrine of contributory negligence prior to the Legislature's abolition of that doctrine. *See Abalos*, 544 S.W.2d at 632; *Quintana*, 347 S.W.3d at 452; *see also Area Metro. Ambulance Auth. v. Reed*, No. 02-22-00406-CV, 2023 WL 3017936, at *6 (Tex. App.—Fort Worth Apr. 20, 2023, no pet.) (mem. op.) (explaining that in 1973, the Texas Legislature eliminated the doctrine of contributory negligence "by adopting article 2212a, which was subsequently replaced with the comparative responsibility framework in Chapter 33 of the Texas Civil Practice and Remedies Code" and that "[i]n 1995, the Legislature modified Chapter 33 by replacing comparative responsibility with proportionate responsibility). However, appellants did not request that a question on contributory negligence be submitted to the jury in the trial court. We construe appellants' first issue as complaining of the trial court's refusal to submit a question regarding appellees' negligence to the jury.

trees" and "failed to put in barriers to protect their trees from the bulldozer work." (Emphasis added). The trial court refused to include the requested question and based on that refusal, rejected appellants' request for a question regarding proportionate responsibility.[6]

In their brief, appellants generally cite evidence they claim supports a finding that appellees' were negligent as follows: (1) "'mechanical damage' was the primary factor in damaging or killing the oak trees; (2) the "mechanical damage" was caused by "the operation of heavy equipment on sandy loam soil, such as a dozer, the effect of which was to disturb the trees' root systems"; (3) appellees "hired contractors to clear out vegetation . . . and apply herbicides"; (4) "some type of machinery" caused damage to a tree's root collar; (5) "damage to the trees could also have been the result of 'feathering' the dirt during [a] clean-up operation in 2011"; (6) "herbicide damage on [appellees'] property" occurred; (7) appellees "appreciated the risk of harm" that the use of heavy equipment and herbicides posed to their oak trees; (8) appellees admitted that "they cautioned their contractors to not disturb or destroy their trees," which shows that they understood the risks; and (9) appellees "could have erected some type of protection around the trees, like fencing, but did not."

To have been entitled to a question on appellees' negligence, appellants must have provided evidence that: (1) a legal duty existed; (2) that duty was breached; and (3) the damages were the proximate result from that breach. *See City of Austin v.*

---

[6] Currently in Texas, pursuant to the proportionate responsibility doctrine, a defendant may request that the jury consider the plaintiff's fault in causing injuries and that "conduct that may be considered in this determination, includ[e] negligent acts or omissions as well as any conduct or activity that violates an applicable legal standard." *Nabors Well Servs., Ltd. v. Romero*, 456 S.W.3d 553, 560 (Tex. 2015).

*Membreno Lopez as Next Friend of Lopez*, 632 S.W.3d 200, 210 (Tex. App.—Austin 2021, pet. denied). Appellants do not address any of the elements of negligence in their brief. Additionally, they do not provide a legal analysis explaining how the above-listed evidence supports each element of negligence, including how appellees' alleged acts and/or omissions proximately caused the damages. *See* TEX. R. APP. P. 38.1(i); *B.T. Healthcare, Inc. v. Honeycutt*, 196 S.W.3d 296, 300 (Tex. App.—Amarillo 2006, no pet.) (providing that under the proportionate responsibility doctrine, to apportion a party's fault, there must be evidence in the record illustrating that the accused party committed negligence); *see also* TEX. R. CIV. P. 278 ("The court shall submit the questions, instructions and definitions in the form provided by Rule 277, which are raised by the written pleadings and the evidence."). Moreover, appellants do not contend that the exclusion of this question caused them any harm. *See Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009) (explaining that a judgment for charge error will be reversed only if the error was harmful because it probably caused the rendition of an improper verdict or probably prevented an appellant from properly presenting the case to the appellate courts). Therefore, to the extent that appellants complain on appeal that the trial court should have included their requested negligence question, we cannot conclude that the trial court abused its discretion by refusing to do so or that appellants were otherwise harmed by such error, if any.[7] *See id.* (noting that

---

[7] Appellees point out correctly that appellants are complaining of damages that were allegedly caused by third-party contractors. Specifically, appellants refer to acts committed by a bulldozer that was not operated by appellees and the acts of another hired person who sprayed the herbicides on the property. However, appellants do not allege and do not provide analysis explaining how appellants would be responsible for the alleged negligence of these third-party actors. Moreover, evidence was presented that the work performed was based on a conservation plan recommended by the Natural Resources Conservation Service, which evidence showed "vastly improved the appearance and value of the property."

we review the trial court's decisions regarding the jury charge for an abuse of discretion). We overrule appellant's second issue.

## IV.    RESPONSIBLE THIRD PARTY

By their third issue, appellants contend that the trial court erred by granting appellees' motion to strike the trial court's designation of Victoria County as an RTP. Appellees respond that the trial court did not err because appellants failed to present more than a scintilla of evidence that Victoria County was negligent and thus responsible for the injuries sustained.

### A.    Applicable Law and Standard of Review

A defendant may designate a person or an entity as an RTP. TEX. CIV. PRAC. & REM. CODE ANN. § 33.004(a). The trial court may not submit a question to the jury regarding the RTP's conduct without sufficient evidence to support the submission. *Id.* § 33.003(b). The jury determines the percentage of an RTP's responsibility if the evidence shows that the RTP either caused or contributed to cause in any way the claimant's damages, "whether by negligent act or omission, by any defective or unreasonable dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these." *Id.* at § 33.003(a).

---

Appellees further argue that the bulldozer operator and the person who sprayed the herbicides were both independent contractors, which they argue means appellees were not responsible for their negligence, if any. *See AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d 289, 295 (Tex. 2020) (explaining that "no duty of care arose with respect to an independent contractor's work by virtue of the employer's general right . . . to direct when and where the work was done"); *Johnston v. Oiltanking Hous., L.P.*, 367 S.W.3d 412, 415 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Generally, a premises owner or general contractor has no duty to ensure that an independent contractor safely performs his work[;]. . . . [however,] when the [landowner] retains some control over the independent contractor's work, [he] must exercise that control with reasonable care."). We agree with appellees that appellants have not shown on appeal and did not present evidence in the trial court sufficient to show that appellees were responsible for the negligent acts or omissions, if any, committed by their independent contractors.

"After adequate time for discovery, a party may move to strike the designation of [the RTP]" on the basis that there is no evidence that the designated party is responsible for any portion of the plaintiff's injuries. *Id.* at § 33.004(l). "Then, the burden shifts to the designating party to 'produce[ ] sufficient evidence to raise a genuine issue of fact regarding the designated person's responsibility for the claimant's injury or damage.'" *Gregory v. Chohan*, 670 S.W.3d 546, 566 (Tex. 2023).

Our standard of review mirrors that of a no-evidence summary judgment. *Id.* Therefore, to defeat a motion, a party must specifically identify the supporting proof on file that it seeks to have considered by the trial court. *See Arredondo v. Rodriguez*, 198 S.W.3d 236, 238 (Tex. App–San Antonio 2006, no pet.); *Gregory*, 670 S.W.3d at 566. "Whether the proof establishes as a matter of law that there is no genuine issue of fact' is to ask a question of law, which means that review of the denial of a [RTP] designation is de novo." *Id.; Flack v. Hanke*, 334 S.W.3d 251, 261 (Tex. App.—San Antonio 2010, pet. denied) (setting out standard of review of a decision pursuant to § 33.004(l)).

A defendant produces sufficient evidence to raise a genuine issue of fact when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *King Ranch, Inc.*, 118 S.W.3d at 751 (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). There is less than a scintilla of evidence when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983); *see also In re Transit Mix Concrete & Materials Co.*, No. 12-13-00364-CV, 2014 WL 1922724, at *3 (Tex. App.—Tyler May 14, 2014, no pet.) (mem. op.) ("For instance, under the equal inference

26

rule, evidence of circumstances equally consistent with two facts does not rise above a scintilla of proof of either fact, and is thus no evidence of either.") citing *City of Keller*, 168 S.W.3d at 813.

Therefore, to defeat appellees' motion to strike the RTP designation of Victoria County, appellants must have produced sufficient evidence to raise a genuine issue of fact that Victoria County caused or contributed to cause in any way appellees' damages "whether by negligent act or omission, by any defective or unreasonable dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.003(a). Accordingly, there must be more than a scintilla of evidence of a legal duty owed to appellees by Victoria County, a breach of that duty, and damages to the appellees proximately caused by Victoria County's breach of the duty. *See Crosstex N. Tex. Pipeline, L.P.*, 505 S.W.3d at 607 (setting out the elements of negligence); *see also Tenaris Bay City Inc. v. Ellisor*, No. 14-22-00013-CV, 2023 WL 5622855, at *10 (Tex. App.—Houston [14th Dist.] Aug. 31, 2023, no pet. h.) (mem. op.) (explaining that to be entitled to RTP designation, the defendant had to establish that there is some evidence of each element of negligence).

## B.    Analysis

Appellants discredit and contest much of appellees' evidence regarding who caused the flooding to their property. Appellants claim that their burden was merely to show that Victoria County "caused or contributed to causing in any way" appellees' damages. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.003(a). However, § 33.003(a) further instructs that the RTP must have "caused or contributed to causing in any way"

27

appellees' damages "whether by negligent act or omission, by any defective or unreasonable dangerous product, by other conduct or activity that violates an applicable legal standard, or by any combination of these. . . ." *Id.* at § 33.003(a); *see also Tenaris Bay City Inc.*, 2023 WL 5622855, at *10. Thus, to be designated an RTP, Victoria County must have contributed to causing the flooding and pooling of water by a negligent act or omission. *See id.*

Appellants do not address the elements of § 33.003(a) in their brief. *See* TEX. R. APP. P. 38.1(i). Moreover, appellants do not claim that Victoria County either had a duty to appellees or that Victoria County breached such a duty. *See Crosstex N. Tex. Pipeline, L.P.*, 505 S.W.3d at 607; *see also Tenaris Bay City Inc.*, 2023 WL 5622855, at *10. Therefore, appellants have not met their burden of showing that they raised an issue of genuine fact regarding Victoria County's negligence. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 33.003(a)

Nonetheless, appellants claim that Victoria County caused the damages to appellees' property by widening and deepening a tributary that ran through the land, which occurred ten years prior to the flooding on appellants' property. Appellants claim that the widening and deepening of the tributary "increased the volume and flow of surface and drainage water in some parts of the Tributary" and that this then caused flooding and impounding of water on appellants' property that then caused flooding and impounding of water upstream on the appellees' property. [8] Although appellants claim that Victoria

---

[8] Specifically, appellants state in their brief without citation to the record the following:

To date, therefore, the Tributary downstream of Pura Vida had never been deepened, widened, or otherwise cleared. As a result, surface and drainage water in the Tributary that should have been flowing downstream towards Leona Creek was backing up instead,

County's acts caused the flooding to their own property and to appellees' property, they do not cite the record wherein such evidence was presented to the trial court. We are not required to scour a voluminous record to find such evidence.[9] *See Dunn v. Bank-Tec S.*, 134 S.W.3d 315, 328 (Tex. App.—Amarillo 2003, no pet.) (explaining that "it is not our duty to scour the trial record for evidence supporting [the appellant's] contention, especially in a multi-volume record like that before us"); *see also Lloyds*, 2018 WL 1773304, at \*13 (refusing to "scour" a voluminous record to address the appellant's

---

flooding the adjacent properties. This was causing flooding and the impounding of water on the Kucera Parties' property, which in turn was causing flooding and the impounding of water upstream from the Kucera property, on the Kolle property.

. . . .

The pretrial evidence showed that the increased volume and flow of surface and drainage water facilitated by the culverts installed by the County, combined with the backup, flooding, and impounding caused by the County's failure to deepen and widen the Tributary downstream of Pura Vida, had directly caused both the properties in question to flood, hold water, and/or accommodate unreasonably high volumes of surface and drainage water at a more severe degree, nature, and frequency than if the County had acted in a prudent manner in respect to the Tributary projects. The pre-trial evidence therefore gave rise to genuine issues of material fact about the County's responsibility for all, or at least a part of, the Kolles' alleged damages. A reasonable jury, relying on this evidence, could have found that the County's actions "caused or contributed to causing in any way" the Kolles' alleged damages. As a result, the trial court should have denied the Kolles' motion to strike the County as an RTP.

Without citation to the record, we are unable to determine that these claims were in fact presented with evidence to the trial court. *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) ("the nonmovants must "identify specific evidence in the record" and articulate the "precise manner" in which that evidence supports its claims).

[9] Appellants cite evidence in the record that they claim support a finding that (1) Victoria County's acts of widening and deepening the tributary was imprudent; (2) Victoria County failed to obtain consent from downstream property owners to widen their portion of the tributary; (3) such failure to obtain consent was improper; (4) the volume of water was increased by Victoria County's acts; (5) Victoria County's acts could possibly cause "water backup"; (6) Wayne Dierlam, a Victoria County commissioner testified that he was against widening and deepening the tributary because he could not obtain the required consents from all the property owners' (7) Dierlam believed doing so would be imprudent; (8) in 2011, "the County added four 24-inch culverts under Nickel Road to increase drainage from the large field north of Nickel Road southward into the Tributary"; and (9) "the culverts directly caused an increase in the volume of surface and drainage water flowing from the property north of Nickel Road into the Tributary." None of this evidence supports a finding that Victoria County caused or contributed to appellees' damages.

29

factual sufficiency contention).

Moreover, the evidence shows that appellees' property started flooding after appellants' activities, which included, among other things, building the berm and the dam. There is no evidence that appellees' property flooded prior to the construction of the dam and berm. Therefore, appellants failed to raise an issue of genuine fact supporting a finding that Victoria County's acts or omissions caused or contributed to the flooding. Accordingly, we cannot conclude that the trial court erred in granting appellees' motion to strike Victoria County as a RTP. We overrule appellants' third issue.

## V. THE AMOUNT OF THE JUDGMENT

By their fourth, fifth, and sixth issues, appellants contend that "[t]he trial court erred in calculating the amount of the judgment and applying the rule of joint and several liability." Specifically, appellants argue that the trial court erred in calculating damages in "three different ways," which we renumber as follows: (1) "the [trial] court erred in awarding [appellees] not only damages for diminished fair market value, but also damage for past and future loss of use of their real property"; (2) "the [trial] court erred in awarding joint and severable liability against K&K and Valerie"; and (3) "the [trial] court erred in computing the recovery of punitive damages." Appellants seek modification of the jury's award of actual and punitive damages.

## A. Future Loss of Use of Real Property

By their fourth issue, appellants contend that appellees sought damages for permanent damage to real property; therefore, they were not entitled to loss of use and enjoyment damages pursuant to the economic feasibility exception. Appellees respond

30

that appellants "misunderstand and misapply the Texas Supreme Court's decisions in *Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Tex.), L.P.*, 449 S.W.3d 474 (Tex. 2014) and" *Crosstex N. Tex. Pipeline LP*, 505 S.W.3d at 581. Appellees do not dispute that the trial court awarded damages for permanent injury to their property but as we understand it, appellees maintain that although the injury was "'deemed permanent for the purposes of calculating repair damages," nonetheless, "landowners can recover 'loss of use' damages" in these circumstances.

Generally, when damage to real property is temporary, "the proper measure of damages is the cost to restore or replace, plus loss of use." *Enbridge*, 449 S.W.3d at 481. However, when damage to real property is permanent, the plaintiff is entitled to the loss in fair market value. *See id.* Thus, "'the true measure of damages in case of permanent injury to the soil is the difference between the value of the land immediately before the injury and its value immediately after.'" *Id.* at 478–79 (quoting *Fort Worth & D.C. Ry. Co. v. Hogsett*, 4 S.W. 365, 366 (1887)). A permanent injury entitles a landowner to the loss in the fair market value of the property but not to the loss of use. *Id.* at 481.

However, "Texas courts have recognized the so-called economic feasibility exception to the general rule" regarding a temporary injury to the property. *Id.* The economic feasibility exception "applies when the cost of required repairs or restoration exceeds the diminution in the property's market value to such a disproportionately high degree that the repairs are no longer economically feasible." *Id.* at 481. Accordingly, "[i]n those circumstances a temporary injury is deemed permanent, and damages are awarded for loss in fair market value." *Id.* Once a temporary injury is deemed permanent,

31

the parties do not recover for loss of use damages, and we find no cases stating otherwise. *See Enbridge*, 449 S.W.3d at 481; *cf. J&D Towing, LLC v. Am. Alt. Ins. Corp.*, 478 S.W.3d 649 (Tex. 2016) (permitting recovery of a diminution in market value of a truck and loss of use damages, but not dealing with real property).

Here, in their motion for entry of judgment, appellees requested for the trial court to render judgment based on, in pertinent part, the following:

> Although the jury found that, assuming "the dams, berms, roads or other obstructions" were removed, the Plaintiffs' property was capable of being repaired, fixed, or restored and the injury to the land was "of such a character that any anticipated recurrence would be only occasional, irregular, intermittent, and not reasonably predictable," the Court finds that cost to repair, fix, or restore the Kolles' property are limited to the difference in the market value of the Kolles' property under the "economic feasibility" exception.

Thus, appellees conceded in the trial court that the economic feasibility exception applies, and the trial court awarded the loss of the fair market value of the property to appellees. Consequently, appellees admitted and the trial court agreed that as a matter of law their damages were deemed permanent. See *Enbridge*, 449 S.W.3d at 478–79. As such, appellees were not entitled to loss of use damages. *See id.* We sustain appellants fourth issue.

## B. Joint and Several Liability

By their fifth issue, appellants contend that the trial court erred by holding Valerie and K&K jointly and severally liable. First, appellants argue that "K&K cannot be jointly and severally liable for the entire amount of actual damages awarded" because K&K is only forty percent responsible for the alleged harm. Second, appellants argue that Valerie cannot be held jointly and severally liable because appellees "elected to recover based

32

on the jury's findings that [appellants] intentionally and negligently created a private nuisance, even though the claims for intentional nuisance and negligent nuisance were mutually exclusive of one another."

### 1. K&K

Appellants complain on appeal that K&K cannot be held jointly and severally liable for the economic damages because its percentage of responsibility is not greater than fifty percent. *See* TEX. CIV. PRAC. REM. CODE ANN. § 33.013(b). Pursuant to § 33.013(b), if the defendant's percentage of responsibility is greater than fifty percent, that defendant is jointly and severally liable for the damages. *Id.* However, the defendant "is liable to a claimant only for the percentage of the damages found by the trier of fact equal to that defendant's percentage of responsibility" if the percentage of liability is less than fifty percent. Here, the jury found K&K only forty percent liable. *Id.* 33.013(a).

Nonetheless, appellants acknowledge that the trial court held K&K jointly and severally liable under the theory of respondeat superior. "Generally in Texas, the doctrine of vicarious liability, or respondeat superior, makes a principal liable for the conduct of his employee or agent." *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 686 (Tex. 2007) (citing *Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998)). "This liability is based on the principal's control or right to control the agent's actions undertaken to further the principal's objectives." *See id.* Appellants do not argue that it was error for the trial court to find K&K vicariously liable for David's acts, in fact it appears that has been their theory of case in the trial court and on appeal. Furthermore, appellants do not provide a clear and concise argument explaining how it was error for

33

the trial court to hold K&K jointly and severally liable under the respondeat superior theory, one that they argued to the trial court. *See* TEX. R. APP. P. 38.1(i). Instead, appellants again complain that the evidence is insufficient to hold K&K forty percent liable. We have already determined that appellants requested the question asking the jury to determine K&K's percentage of responsibility and that the evidence is sufficient to show that David acted in part for his individual interest and on behalf of K&K's interest when he built the berm and dam. Additionally, appellants have waived an argument that the evidence is insufficient to support that K&K is vicariously liable for David's acts because that is what they argued to the trial court. Accordingly, we overrule this issue.

### 2.    Valerie

Appellants argue that for Valerie to be held jointly and severally liable for the actual damages suffered, appellees must have relied "on the jury's finding that the nuisance was intentionally created." However, according to appellants, "to also recover punitive damages from David and K&K, appellees are relying on inconsistent and mutually exclusive torts" because to get punitive damages, appellees relied on David and K&K's gross negligence. Thus, appellants maintain that "[t]he trial court erred in not requiring [appellees] to elect upon which theory of recovery they wish[ed] to rely."

We find no merit in this argument because the jury found that appellants were liable for creating an intentional nuisance and that David and K&K caused harm to the appellees by their gross negligence, which the trial court included in its judgment. The trial court further stated that appellees elected to pursue remedies for nuisance. The trial court did not state or indicate that appellees sought damages only for negligently causing a

34

nuisance as appellants appear to argue. Therefore, we overrule appellants fifth issue.

## C.    Punitive Damages

By their sixth issue, appellants claim that the award of punitive damages exceeded the statutory cap because the trial court improperly awarded loss of use damages. *See In re Columbia Med. Ctr. of Las Colinas*, 306 S.W.3d 246, 248 (Tex. 2010) ("Punitive damages awards that are statutorily capped are required to be recalculated when the actual damages against which they are measured are reduced on appeal."). Thus, punitive damages must be recalculated based on the actual damages that should have been awarded. Furthermore, appellants assert that the amounts awarded were erroneous because David and K&K were each found to be forty percent liable to appellees, and the trial court did not take that into consideration when assessing the cap. Appellees respond that the statutory cap in this situation allows for the award of $350,000 for David's liability and K&K's liability ($175,000 x 2), which is greater than the amount actually awarded of $200,000 each.

Thus, we must decide whether the damage cap applies to the appellees' award or appellants' liability. *See Seminole Pipeline Co. v. Broad Leaf Partners, Inc.*, 979 S.W.2d 730, 751 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (addressing similar issue under the previous punitive damages cap of four times the actual damages). In *Seminole*, the court of appeals concluded that the prior statutory cap to punitive damages applied "on a 'per defendant' basis." *Id.*; *see also Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848, 878 (Tex. 2017) (pointing out that the Texas Supreme Court has determined that "when considering the statutory cap on wrongful-death damages . . . the

cap should be calculated on a per-defendant basis" and stating, "In short, our past decisions make clear that damages caps should be calculated on a 'per defendant' basis.). The legislator who authored the prior statute said, "[A] claimant cannot recover exemplary damages from any one defendant in excess of four times the amount of the claimant's actual damages, but can recover up to that amount *from each defendant* against whom the trier of fact awards exemplary damages." *Id.* (citing the house review of the prior statute). The *Seminole* court set out an example as follows: The actual damages are $100,000, Defendant A is thirty percent responsible, Defendant B is fifty percent responsible, and the jury orders Defendant A to pay $250,000 and Defendant B to pay $1,000,000 in punitive damages. The trial court must order Defendant A to pay exactly what the jury determined that the punitive damages were ($250,000) and the trial court must cap the award of punitive damages that Defendant B must pay to $400,000 (4 x $100,000), and it may not award the jury's amount of $1,000,000. *Id.* at 751 n.21. The prior statute interpreted by the *Seminole* court stated "that 'exemplary damages awarded against *a defendant* may not exceed four times the amount of actual damages.'" *Id.* The court reasoned, "Like the civil liability cap found in the Medical Liability and Insurance Improvement Act, 'the damages cap amounts should be calculated on a 'per defendant' basis because the [the statute] clearly applies to the recovery against the individual defendant, not the award to the individual plaintiff.'" *Id.* at 751–52. Therefore, the court in Seminole did not determine that punitive damages were linked to the percentage of responsibility as found by the jury. *See id.*

The current statute reads as follows: "Exemplary damages awarded against a

defendant may not exceed an amount equal to the greater of . . . two times the amount of economic damages . . . or $200,000. TEX. CIV. PRAC. & REM. CODE ANN. § 41.008.[10] In *Centocor, Inc. v. Hamilton*, we analyzed the current statute and applied the reasoning in *Seminole*, and we likewise held that "[e]xemplary damages are calculated on a per defendant basis." 310 S.W.3d 476, 522 (Tex. App.—Corpus Christi—Edinburg 2010), *rev'd in part on other grounds*, 372 S.W.3d 140 (Tex. 2012). In *Centocor*, the appellant "argue[d] that the trial court misapplied the punitive damages cap when calculating the final damages." *Id.* at 521. The appellant "complaine[d] that the trial court applied the cap to the total damages awarded to the [plaintiffs] without taking into account that [the appellant] was only found 85% liable for the damages." *Id.* We stated that "[t]he current version keeps the same language [as the previous one analyzed by the *Seminole* court] except changes the amount of the cap." *Id.* at 522 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 41.008). In *Centocor*, "[t]he economic damages were $65,908, which was doubled to $131,816. Then the trial court added $750,000 [for noneconomic damages], for a total award of $881,816.00 in punitive damages." *Id.* at 521–22. We held that the trial court did not miscalculate the cap even though the jury found that the appellant had only been eighty-five percent liable, a fact that bore no influence on our analysis. *Id.*; *see also Wackenhut Corr. Corp. v. de la Rosa*, 305 S.W.3d 594, 651 (Tex. App.—Corpus Christi–Edinburg 2009, no pet.), *abrogated on other grounds by Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143 (Tex. 2015) (disagreeing with *Wackenhut* that the statutory cap on

---

[10] The cap allows an additional $750,000 of noneconomic damages to be added to the actual damages multiplied by two. TEX. CIV. PRAC. & REM. CODE ANN. § 41.008(b)(1)(B). However, the trial court here did not award appellees any noneconomic damages.

exemplary damages is waived if not pleaded as an affirmative defense).

Here, appellants argue that the trial court should have taken the proportionate responsibility of each defendant into account when it calculated the amount of punitive damages. However, we agree with and adopt the reasoning in *Seminole* and *Centocor*. *See Seminole*, 310 S.W.3d at 522; *see also Centocor*, 310 S.W.3d at 522; *Wackenhut Corr. Corp.*, 305 S.W.3d at 651 (calculating that the statutory cap for the award of twelve million in actual and noneconomic damages would be $751,103 "*against each defendant*" by adding actual damages of $551.50 x 2 with $750,000 for noneconomic damages) (emphasis added). Accordingly, we conclude that the trial court properly calculated the amount of punitive damages on a per defendant basis, and the amount that each appellant, David and K&K, must pay does not exceed twice the actual damages awarded ($175,000 x 2 = $350,000). *See Seminole*, 310 S.W.3d at 522; *see also Centocor*, 310 S.W.3d at 522. We overrule appellants' fifth issue to the extent they make this argument. *See Seminole*, 310 S.W.3d at 522 (disallowing and criticizing the cap formula as interpreted as actual damages times four equals the total amount of punitive damages that all defendants must divide and pay and determining that the proper formula is actual damages times four for each defendant); *Centocor*, 310 S.W.3d at 522.

Additionally, appellants claim that the trial court failed to properly apply the cap because it ordered David and K&K to each pay $200,000 to Clay and Lacy for a total of $800,000. Appellants state that Seminole "addressed how to apply the punitive damages cap against multiple defendants, not in favor of multiple plaintiffs." Appellants cite no authority, and we find none, concluding that the cap prohibited the trial court from

38

awarding both Clay and Lacy punitive damages. *See* Tex. R. App. P. 38.1(i); *see also Seminole*, 979 S.W.2d at 752 (approving the trial court's award of punitive damages limited to the cap to each plaintiff). We overrule appellants' sixth issue.

## VI. NO ALTERNATIVE BASIS FOR AFFIRMING THE JUDGMENT

By their seventh issue, appellants contend that there is no alternative basis to uphold the judgment. By this issue, it appears that appellants argue that because they have prevailed on all of their issues, we must reverse the entire judgment. However, we have not sustained all of their issues, and therefore, this issue is not dispositive. *See* Tex. R. App. P. 47.1.

## VII. CONCLUSION

We reverse the judgment in part as to its award of loss of use damages in the amount of $250,000, and we render a judgment awarding appellees' zero damages for loss of use. We affirm the judgment in all other respects.

JAIME TIJERINA
Justice

Delivered and filed on the
28th day of December, 2023.

39